**HEADINGTON OIL COMPANY, L.P., On its Own Behalf and as Successor–In–Interest to Headington Canada Corp. and Headington Oil Company and Bruce Gary d/b/a Gary Oil and Gas, Appellants,**

v.

**Modesto WHITE, Jr. and Richard N. Evans, Appellees.**

No. 14–07–00050–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 26, 2009.

Rehearing Overruled May 21, 2009.

J. Robert Beatty, Dallas, Rex H. White, Jr., Austin, for appellants.

Richard N. Evans, Beaumont, for appellees.

Panel consists of Chief Justice HEDGES, and Justices BROWN and BOYCE.

## OPINION

JEFFREY V. BROWN, Justice.

Headington Oil Company, L.P. and Bruce Gary appeal a judgment awarding unpaid royalties on the sale of oil and gas, prejudgment interest, attorney's fees, and expert-witness fees to the appellees. Headington appeals the award of statutory prejudgment interest because it is barred by a "safe harbor" provision; the award of attorney's fees because the appellees are not "prevailing parties"; and the award of expert-witness fees because they are not taxable court costs. Gary joins Headington in contending that the trial court erred in awarding prejudgment interest and expert-witness fees. Gary further argues that the trial court erred in awarding royalties against him based on all production in the field, rather than just one specific well, and that the statute of limitations bars most of the claimed royalties. We reverse the trial court judgment and remand for recalculation of the damages awarded against Gary, as well as the attorney's fees awarded against both appellants.

### The Facts

This appeal involves ten years of litigation aimed at recovering the possession of oil and gas royalties allegedly withheld by successive well operators. Appellee Modesto White, Jr., owns a fractional non-participating royalty interest in oil and gas produced from a property known as the Luke Bryan Survey, Abstract 41, in Chambers County. In January 1993, White assigned an undivided one-fourth interest in his then-existing ownership interest jointly to Rex G. Fortenberry and appellee Richard N. Evans.

In 1994, Headington purchased leases on the Luke Bryan Survey where producing oil and gas wells already existed. In August of that year, Headington requested signatures on division orders from each of the known interest owners—both royalty and working interests—to authorize payment of royalties on two wells known as the Furl White No. 1 and the Pearl White No. 1. These division orders set forth the names of and fractional interests held by each of the sixty-five interest owners, including White, Fortenberry and Evans. Additionally, the division orders provided that the appellees and Fortenberry together owned a 0.003777 total fractional royalty interest.

Evans returned the division order to Headington unsigned, maintaining that the order incorrectly stated the proper ownership interests of Evans, Fortenberry, and White. In a letter accompanying the returned order, Evans stated that the correct total interests owned by White, Evans, and Fortenberry was 0.053571–a difference of 0.049794 from the interest amount recited in the division order, and almost five percent of the total fractional interests in the two wells. Evans enclosed with the letter copies of relevant court decisions and other documents to substantiate his contention. Based on this information, Headington placed the royalties accruing to White, Evans, and Fortenberry in a suspense account while it studied the matter to "determine the correct ownership for each interest." In so doing, Headington stated that it would seek additional information from prior lease operators.

In January 1995, Evans demanded payment from Headington of accrued royalties based on the combined 0.053571 royalty

interest, citing rights guaranteed under the prevailing Texas oil and gas statutes. Later, in December of that year, having still not received payment, Evans demanded it again. In January 1996, Headington informed Evans that it was still trying to clarify the ownership interests, and stated that it had commissioned a supplemental title opinion on the lease. Headington contended that it would be impossible to determine ownership interest amounts without such an opinion.

On November 6, 1996, White, Evans, and Bettie Fortenberry—the late Rex Fortenberry's widow—made another demand for payment of royalties. The parties continued to discuss this demand in light of Headington's efforts to obtain a title opinion.

On March 17, 1997, White filed suit in the Chambers County district court against Headington and Graham Royalty Ltd., the prior operator of the lease, alleging trespass, wrongful eviction, and conversion of royalties, and seeking to determine title. White further asked the court to determine his fractional royalty interest, and to quiet title to it. White's petition alleged that he owned a 0.0491 fractional interest in the wells. Headington answered with a general and verified denial.

On October 27, 1997, Headington forwarded to Evans a limited title report prepared by A. Wayne Breeland. In his report, Breeland stated that circumstances in the chain of title prevented him from being able to "separately state the interests owned by [White], and his assigneees [Evans] and [Fortenberry]." But Breeland was able to state the total interests owned in combination by a group consisting of White, Evans, Fortenberry, Melovee White, and Gielda White. Melovee and Gielda were also known fractional royalty interest owners in the Luke Bryan Survey.

Between 1997 and 2003, White and Evans filed five more amended petitions against Headington. Along the way, they dropped their claims against Graham Royalty Ltd., but added Melovee White, Gielda White, and other parties as co-defendants. During this period the appellees narrowed their causes of action against the defendants to the recovery of unpaid royalties, prejudgment interest, attorney's fees, and the reformation of the deed to reflect White's conveyance to Fortenberry and Evans. In each of their amended pleadings, the first through the fifth, the appellees sought to recover unpaid royalties based on their claim of a 0.053571 fractional royalty interest in the lease. Melovee and Gielda White filed counter-claims against White and Evans to secure their title rights on the lease, as well as cross-claims against Headington and other well operators for royalties based on the disputed interests.

In May 1998, Headington assigned the lease on the Luke Bryan Survey to the Pearl River Corporation. Pearl River's contract operator, Bruce Gary, took over operation of four wells on the lease, including the Furl White No. 1 and the Pearl White No. 1. Headington informed Gary that title to some of the royalty interests was disputed. Headington also transferred its suspense account to Gary, who did not pay royalties to White, Evans, or Fortenberry's estate; but instead, Gary continued Headington's practice of holding the royalties in suspense until the dispute was resolved. Gary operated the wells until October 1, 2000, when it transferred operations, along with the suspended funds, to American Coastal Energy.

In July 2005, the appellees filed a seventh amended petition against Headington, Gary, the assignee of Fortenberry's heir, and another producer on the lease. In this complaint, the appellees sought an ac-

counting of all production on the Luke Bryan Survey for a specified period, unpaid royalties based on this production, prejudgment interest, attorney's fees, expert-witness fees, and a reformation of the deed to reflect White's conveyance to Evans and Fortenberry. For the first time, the appellees based their claim for unpaid royalties on a combined 0.01577116 fractional royalty interest. This new royalty amount was taken from a title-opinion letter commissioned by Headington and prepared by attorney T. Michael Harrell.

In response to this amended pleading, Headington filed a stipulation and interpleader with the trial court. Headington stipulated that appellees held title to a 0.01577116 fractional royalty interest in the Luke Bryan Survey. Further, Headington deposited into the registry of the court $38,310.20, a royalty amount based on the 0.01577116 combined interest, pending the signing of a final judgment as to the claims between the appellees and Melovee and Gielda White.

The parties tried the case to the bench on March 28, 2006. Neither Melovee White nor any representative of Gielda White's estate[1] appeared for trial. At the beginning of the proceedings, the appellees announced that settlements had been reached with all of the operators except Headington and Gary. In trying the appellees' claims against Headington and Gary, the court heard testimony from White, Evans, Gary, and two other witnesses. The court found in favor of the appellees, awarding them the royalties held in the court registry, additional royalties owed by Gary, prejudgment interest, attorney's fees, and expert-witness fees. The court also dismissed all of Melovee's and Gielda White's claims based on their failure to appear, and filed findings of fact and conclusions of law. This appeal followed.

1. Gielda White died before trial.

### Analysis

In three issues, Headington contends that the trial court erred by awarding the appellees prejudgment interest, attorney's fees, and expert-witness fees. Gary asserts two issues on the same grounds. Additionally, Gary asserts a third issue arguing that the trial court improperly assessed damages based on the production of gas from all Gary-operated wells on the lease, rather than just the Furl White No. 1, and that the statute of limitations barred most of the royalties claimed against Gary.

### A. Standard of Review

Most of Headington's and Gary's issues concern the trial court's conclusions of law. We review such conclusions de novo. *In re Moers*, 104 S.W.3d 609, 611 (Tex.App.-Houston [1st Dist.] 2003, no pet.). If the evidence supports the conclusions under any legal theory, we will sustain them. *Id.* By contrast, we do not review findings of fact de novo, as they have the same force and dignity as a jury's verdict. *See Huang v. Don McGill Toyota, Inc.*, 209 S.W.3d 674, 679 (Tex.App.-Houston [14th Dist.] 2006, no pet.). We must afford findings their proper weight, but when a complete reporter's record is filed, they are not conclusive. *Id.*

### B. Prejudgment Interest

■ In their first issue, both Headington and Gary argue that the trial court erred in awarding prejudgment interest. The court based its award on section 91.403 of the Texas Natural Resource Code, which provides that an operator must pay interest to the royalty owner when royalty payments are not made with-

in the time frame set by section 91.402. Tex. Nat. Res.Code Ann. § 91.403 (Vernon 2001). Headington and Gary argue that section 91.403 does not apply in this case, because they both qualify under the "safe harbor" provision of section 91.402(b). This subsection provides that payments may be withheld without interest beyond the time limits set out in subsection (a) when there is a dispute concerning title that would affect the distribution of payments. *Id.* § 91.402(b)(1) (Vernon 2001 & Supp.2008).

■ The purpose of section 91.402 is to protect royalty owners from intentional payment delays, but to permit delays that result from legitimate title disputes. *Browning Oil Co., Inc. v. Luecke,* 38 S.W.3d 625, 647 (Tex.App.-Austin 2000, pet. denied) (citing *Concord Oil Co. v. Pennzoil Exploration & Prod. Co.,* 966 S.W.2d 451, 461 (Tex.1998)). Headington and Gary contend that a legitimate title dispute existed in this case because there was a clear disagreement over the proper amount of the appellees' fractional royalty interest. Appellees respond that there was never any dispute regarding their entitlement to royalties-merely to the amount. Appellees contend that such a disagreement on the amount of appellees' fractional royalty interest does not qualify as a "title dispute" under section 91.402(b).

The trial court's findings of fact establish that the parties stipulated to a 0.01577116 fractional royalty interest in the Luke Bryan Survey. But the stipulation occurred only several months before trial—eight years after the appellees filed their original petition. The appellate record shows that there was a clear disagreement regarding the appellees' fractional royalty interest from the date that the appellees refused Headington's division order until Headington filed its stipulation and interpleader in response to the appel-

lees' seventh amended petition. In that petition, the appellees reduced their prior claim of a combined 0.053571 royalty interest to a combined 0.01577116 interest, less than one-third of the amount they had claimed for the previous eight years. At trial, Evans testified that they reduced the amount in response to the Harrell title opinion. Evans further testified that while he still disagreed with Harrell's calculation, he adopted it in the appellees' seventh amended petition in the hope that Headington and Gary would agree and deposit the accrued royalties into the registry of the court. The record shows that Headington did that in December 2005, leaving prejudgment interest and legal fees as the only issues to be resolved.

The circumstances here parallel those in *Concord Oil Co. v. Pennzoil Exploration and Production Co.,* 966 S.W.2d 451 (Tex. 1998), the Texas Supreme Court's only case to date applying section 91.402. In *Concord Oil,* the court reviewed a mineral-rights deed that appeared to convey two different royalty interests. The deed's granting clause expressly conveyed an undivided one-ninety-sixth interest in all minerals under the tract, while a later clause described the interest as "one-twelfth (1/12) of all rentals and royalty of every kind and character." *Id.* at 453. After holding that the deed was ambiguous, and construing it to convey a one-twelfth interest, the court reversed the trial court's award of prejudgment interest under section 91.403, stating, "There is no doubt that a dispute concerning title exists in this case." *Id.* at 461. The court went on to say, "The Legislature has indicated very clearly in the Natural Resources Code that prejudgment interest is not due when disputes exist . . . over oil and gas titles." *Id.* at 463.

Likewise, the Eastland Court of Appeals applied *Concord Oil's* reasoning in a case

construing another ambiguous mineral deed. *Gore Oil Co. v. Roosth,* 158 S.W.3d 596 (Tex.App.-Eastland 2005, no pet.). After determining that the trial court had correctly construed the deed in favor of the successors-in-interest to the original grantor, the court addressed whether the operator owed prejudgment interest under section 91.403. Because the central issue of the case was determining the amount of the royalty interest held by the grantor's successor, the court held that a title dispute "clearly existed" and, consequently, "prejudgment interest was not authorized" under the statute. *Id.* at 602 (relying on *Concord Oil,* 966 S.W.2d at 463).

*Concord Oil Co.* and *Gore Oil Co.* establish that prejudgment interest under section 91.403 is not appropriate when a legitimate dispute exists regarding the amount of royalty the claimant owns. *See Concord Oil Co.,* 966 S.W.2d at 463; *Gore Oil Co.,* 158 S.W.3d at 602.

The appellees assert that, when there is no disagreement as to the existence of *some* ownership rights, a mere disagreement as to the *amount* of a royalty interest is not a title dispute sufficient under section 91.402(b) to deny prejudgment interest. In making this argument, the appellees rely upon *Stable Energy, L.P. v. Newberry,* 999 S.W.2d 538 (Tex.App.-Austin 1999, pet. denied), and *Browning Oil Co., Inc. v. Luecke,* 38 S.W.3d 625 (Tex. App.-Austin 2000, pet. denied).

In *Stable Energy,* the Austin Court of Appeals upheld an award of prejudgment interest under section 91.403 against operators who had failed to pay royalties to royalty-interest owners. 999 S.W.2d at 553–54. In that case, however, the issue was not a dispute concerning the amount of royalty owned by the claimants; it was a dispute concerning whether the operator had any obligation under an assigned lease to pay the claimants—successors-in-inter-est to the original grantor—when the operator had received no notice of a change of interest ownership. *Id.* at 544. The court held that the operator was liable for arbitrarily electing to stop payment based on a flawed understanding of a lease assignment. *Id.* Because the operator's failure to pay royalties was based on a breach of contract, rather than a legitimate title dispute, the court upheld the award of prejudgment interest under section 91.403. *Id.* Because neither the amount nor legitimacy of the claimant's overriding royalty interests was at issue in *Stable Energy,* it does not further the appellees' argument.

*Browning Oil Co.* is also distinguishable. In that case, the Austin Court of Appeals again upheld an award of prejudgment interest under section 91.403. 38 S.W.3d at 648. The unpaid royalties in that case resulted from the violation of the various leases' pooling provisions, not from disputes about the amount of the interest or who owned it. *Id.* at 647–48. *Browning Oil Co.* does not support the appellees' argument.

Finally, the appellees assert that no title dispute existed because no other party claimed the disputed royalty interests. Headington and Gary respond that the competing claims of Melovee and Gielda White prove that the title was disputed. But the appellees deny the existence of any dispute between themselves and Melovee and Gielda White. The appellees contend that they brought Melovee and Gielda White into the suit only for strategic purposes related to the fourth amended petition. Further, the appellees argue that the only affirmative claims Melovee and Gielda White made were against Headington and Gary. The appellate record belies both assertions.

First, the appellees included both Melovee and Gielda White in every amended petition save the seventh. Moreover, Me-

lovee and Gielda White filed common-law and statutory counter-claims against White and Bettie Fortenberry in 1998. White and Evans answered the counter-claims with a joint general denial. Although White and Evans non-suited Melovee and Gielda White in 2006, the counter-claims remained, and served as the basis for Headington's interpleader filing. Likewise, despite Melovee White's absence at trial, her claims, and those of Gielda White's estate, were still being asserted on the day of trial. These competing claims further substantiate the existence of a legitimate title dispute under section 91.402.

The record establishes that a disagreement existed among Headington, Gary, and the appellees regarding the correct amount of the appellees' fractional royalty interest from the date that appellees refused the division order until Headington filed its stipulation and interpleader. Because the disagreement affected Headington's and Gary's abilities to distribute royalty payments in accordance with section 91.402(a), it was a title dispute. Under section 91.402(b), this title dispute extinguished any liability for prejudgment interest. *See Concord Oil Co.*, 966 S.W.2d at 461–63; *Gore Oil Co.*, 158 S.W.3d at 602; *see also Edwin M. Jones Oil Co. v. Pend Oreille Oil & Gas Co.*, 794 S.W.2d 442, 450–51 (Tex.App.-Corpus Christi 1990, writ denied). We sustain the appellants' first issue.

C. *Expert–Witness Fee*

▪ Headington and Gary's third issue on appeal relates to the court's award of expert-witness fees White incurred in preparing for trial. Headington and Gary each contend that expert-witness fees are not taxable court costs. White replies that the trial court properly awarded the expert-witness fees as a sanction for prolonging the litigation.

▪ Texas Rule of Civil Procedure 131 provides that "[t]he successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided." *See Roberts v. Williamson*, 111 S.W.3d 113, 124 (Tex.2003). But recoverable costs do not generally include expert-witness fees. *See AVCO Corp. v. Interstate Sw., Ltd.*, 251 S.W.3d 632, 662 (Tex.App.-Houston [14th Dist.] 2007, pet. denied) (citing *King v. Acker*, 725 S.W.2d 750, 755 (Tex.App.-Houston [1st Dist.] 1987, no writ) and *City of Houston v. Biggers*, 380 S.W.2d 700, 705 (Tex.Civ. App.-Houston 1964, writ ref'd n.r.e.)). If the trial court taxes costs other than those customarily taxed, it may do so only for good cause stated on the record. *See* Tex.R. Civ. P. 141; *Roberts*, 111 S.W.3d at 124.

▪ "Good cause" is determined on a case-by-case basis. *Furr's Supermarkets, Inc. v. Bethune*, 53 S.W.3d 375, 376–77 (Tex.2001); *Rogers v. Walmart Stores, Inc.*, 686 S.W.2d 599, 601 (Tex.1985). In Rule 131 cases, an appellate court should scrutinize the record to determine whether it supports the trial judge's decision to tax the prevailing party with part, or all, of the costs. *Rogers*, 686 S.W.2d at 601 (citing *Bruni v. Vidaurri*, 140 Tex. 138, 166 S.W.2d 81, 96 (1942)). Typically though, "good cause" has meant that the prevailing party unnecessarily prolonged the proceedings, unreasonably increased costs, or committed some other offense. *Bethune*, 53 S.W.3d at 377. Unless the record demonstrates an abuse of discretion, we should not disturb on appeal the trial judge's assessment of costs for good cause. *Rogers*, 686 S.W.2d at 601.

In its conclusions of law, the trial court explained its award of expert-witness fees:

Under Texas Rules of Civil Procedure

191.2,[2] the Court allows the recovery of the Certified Public Account[ant] fees for good cause that neither Headington Oil Company or Bruce Gary made the effort to produce production figures of total production until the day of trial.

In addition, the trial court's findings of fact included the following:

> Headington Oil Company [and Bruce Gary] refused to pay Modesto White Jr. his portion of the proceeds from the sale of oil and gas it produced from the Luke Bryan Survey, Abstract 41, Chambers County, Texas, according to his ownership which required him to employ a certified public accountant to research the records to determine the production and proceeds from the sale of his royalty as provided in Section 91.403 of the Natural Resources Code, Title 3, of the Statutes of the State of Texas.

The trial court appears to have based its award of expert-witness fees on Headington's and Gary's alleged failures to produce production figures. The court relied on Rule 191.2, which mandates cooperation in pre-trial discovery. *See* Tex.R. Civ. P. 191.2. But although the court's findings of fact state that White was "required to employ" an accountant to determine production on the lease, the court's findings do not recite a failure to cooperate with any discovery request by either Headington or Gary. The record does show that appellees requested production of a number of court records, namely trial-court records from prior litigation involving White's interest. But even these records were publicly available. There is no finding or evidence on appeal establishing that Headington or Gary failed to cooperate in discovery or abused the discovery process.

As we have previously stated, Headington and Gary held the appellees' royalties in suspense due to a legitimate title dispute as permitted under section 91.402. Such a lawful suspense of royalties by itself is not a failure to cooperate with discovery. Nor can it qualify as "unnecessarily prolonging" the litigation in this case. Headington's stipulation to the fractional royalty interest amount—the central issue in this case—was in response to the appellees' action of abandoning their original claim and adopting the interest amount described in the Harrell title opinion, an opinion Headington commissioned. Had the appellees not adopted the royalty-interest amount promoted in the Harrell title opinion, we can only presume that this matter would have remained in dispute, to be decided at trial.

Because neither the court's findings, nor the appellate record, demonstrate that either Headington or Gary failed to cooperate in discovery or unnecessarily prolonged the proceedings, the trial court abused its discretion in awarding the cost of expert-witness fees to White. We sustain Headington's and Gary's third issue.

### D. Statute of Limitations

■ In his second issue, Gary asserts that the statute of limitations foreclosed the trial court's award of damages to White and Evans. The appellees reply that Gary offered no proof at trial that limitations applied. Further, the appellees contend that limitations do not apply because Gary's possession of unpaid royalties

---

2. "Parties and their attorneys are expected to cooperate in discovery and to make any agreements reasonably necessary for the efficient disposition of the case. All discovery motions or requests for hearings relating to discovery must contain a certificate by the party filing the motion or request that a reasonable effort has been made to resolve the dispute without the necessity of court intervention and the effort failed." Tex.R. Civ. P. 191.2.

amounted to a constructive trust. Neither the trial court's conclusions of law nor the final judgment mention either a constructive trust or limitations. Instead, the judgment simply sets out an award of royalties for the full period for which Gary operated the wells.

■ The statute of limitations for the recovery of royalty payments is four years. *Koch Oil Co. v. Wilber*, 895 S.W.2d 854, 864 (Tex.App.-Beaumont 1995, writ denied) (citing *Dvorken v. Lone Star Indus. Inc.*, 740 S.W.2d 565, 566 (Tex.App.-Fort Worth 1987, no writ)). At trial, Gary offered unrebutted testimony that he operated the Furl White No. 1 well from around May 1998 until October 1, 2000. Gary also testified-and the record confirms—that he was not added to the suit until March 4, 2004. Gary presented the trial court with sufficient proof to establish that limitations bars the appellees' claims against him concerning events before March 4, 2000.

■ The appellees' argument regarding the application of a constructive trust fails for three reasons. First, the imposition of a constructive trust requires either a breach of fiduciary duty or actual fraud; the appellees have neither pleaded nor proven these claims. *See Willis v. Donnelly*, 118 S.W.3d 10, 35–36 (Tex.App.-Houston [14th Dist.] 2003), *rev'd in part on other grounds*, 199 S.W.3d 262 (Tex. 2006). Second, the trial court failed to impose a constructive trust in either its conclusions of law or final judgment. In any event, a constructive trust would still be subject to limitations. *See Mowbray v. Avery*, 76 S.W.3d 663, 691 (Tex.App.-Corpus Christi 2002, pet. denied) (citing *Carr v. Weiss*, 984 S.W.2d 753, 762 (Tex.App.-Amarillo 1999, pet. denied)).

We sustain Gary's limitations issue as it relates to the appellees' claims predating March 4, 2000. Because limitations do not bar the award of royalties accruing from March 4 through October 1, 2000, we remand this issue to the trial court to determine the proper amount of unpaid royalties for this period.

### E. Scope of Damages

■ In Gary's second issue, he contends that the trial court awarded royalties based on an improper calculation of oil and gas production. Specifically, Gary argues that in calculating royalties accrued to the appellees, the trial court erred by including production from all Gary-operated wells in the field, rather than just the Furl White No. 1 well. To this end, Gary challenges the legal sufficiency of the evidence supporting the trial court's findings that (1) Gary produced oil and gas from the Luke Bryan Survey, (2) Gary sold the oil and gas produced from the Luke Bryan Survey, (3) Gary, as operator of the wells, distributed the proceeds to the owners of royalty in the survey, and (4) Gary held the royalty payments that were due to Modesto White, Jr., and Richard N. Evans in suspense.

When reviewing the legal sufficiency of the evidence, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference supporting it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex.2005). We credit favorable evidence if a reasonable factfinder could, and disregard contrary evidence unless a reasonable fact-finder could not. *Id.* at 827. There is "no evidence" or legally insufficient evidence when (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810. We look to see whether any record evi-

dence supports the challenged finding. *Bellino v. Comm'n for Lawyer Discipline*, 124 S.W.3d 380, 385 (Tex.App.-Dallas 2003, pet. denied). Anything more than a scintilla of evidence is legally sufficient to support the trial court's finding. *Id.*

Of the appellees' various pleadings, only the sixth and seventh amended petitions concern claims against Gary. And in each of those petitions the appellees do not limit their claims for unpaid royalties to production only from Furl White No. 1. Instead, they seek royalties owed to them from "production of any of the wells on the South 203.73 acres of the Luke Bryan Survey[.]" At trial, Gary testified that he operated several wells in the Luke Bryan Survey. Gary's testimony, coupled with the documentary evidence presented at trial, demonstrates that oil and gas was produced from these wells. Gary testified that he marketed the production from these wells, paid the bills, and "disbursed the royalty."

Gary admitted, however, that, in dispersing the royalty, he never paid royalties to the appellees, but instead deposited royalties accruing to White's interest into a suspense account. Gary not only admitted that he had not paid the appellees, he also failed to show at trial that he owed them royalties only on production from Furl White No. 1. As this unrebutted testimony qualifies as more than a mere scintilla, we hold that the evidence is legally sufficient to support the trial court's findings of fact. *See Bellino*, 124 S.W.3d at 385. Because these findings are legally sufficient, and because the appellees' pleadings did not limit their claims to the Furl White No.1 well, the trial court did not err in calculating accrued royalties based on production from all wells operated by Gary on the lease. We overrule Gary's second issue.

## F. Attorney's Fees

Headington's second issue, and Gary's third issue, is that the trial court erred in awarding attorney's fees to the appellees. Headington and Gary each contend that the appellees cannot be considered "prevailing parties" because (1) they abandoned their original royalty-interest claim and instead adopted the fractional interest as Headington's expert calculated it, and (2) they are not entitled to recover either expert-witness fees or prejudgment interest under section 91.403. In response, the appellees state that trial court's judgment entitles them to attorney's fees under the specific language of Chapter 91 of the Natural Resources Code.

The availability of attorney's fees under a particular statute is a question of law. *Holland v. Wal–Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex.1999). Therefore, we review this issue de novo. *Barber v. Colorado I.S.D.*, 901 S.W.2d 447, 450 (Tex. 1995). We construe statutory provisions to ascertain and effectuate legislative intent, and we ascertain that intent by first looking to the plain and common meaning of the statute's words. *Tex. Mut. Ins. Co. v. Sonic Sys. Int'l, Inc.*, 214 S.W.3d 469, 476 (Tex.App.-Houston [14th Dist.] 2006, pet. denied). We must also view a statute's terms in context and give them full effect. *Id.*

Both appellants argue that because the appellees are not "prevailing parties," they cannot recover attorney's fees. The trial court awarded attorney's fees under section 91.406 of the Natural Resources Code. This section provides that, in a suit to collect proceeds and interest from the sale of oil and gas, the court shall include in *any final judgment in favor of the plaintiff* an award of reasonable attorney's fees. Tex. Nat. Res.Code Ann. § 91.406 (Vernon 2001) (emphasis

added). Under this statute, the proper standard to be applied is "any final judgment in favor of the plaintiff," not the "prevailing party" standard applied elsewhere. *See, e.g., Green Int'l., Inc. v. Solis,* 951 S.W.2d 384, 390 (Tex.1997). Applying the plain meaning of the word "favorable," we consider any judgment "favorable" to the plaintiff when he obtains a measure of relief which leaves him in a better position than he held before filing suit.

In this case, the appellees sued for, and the trial court awarded, unpaid royalties. Because Headington does not appeal the award of unpaid royalties, the judgment is "favorable" to the appellees. Likewise, because we have affirmed the trial court's judgment against Gary for unpaid royalties not barred by limitations, the appellees have obtained a "favorable" result from him, too. Accordingly, the trial court correctly determined that the appellees are entitled to some award of attorney's fees from both Headington and Gary.

■ Although the appellees are certainly entitled to an award of fees, the amount remains an issue. Section 91.406 provides for "an award of reasonable attorney's fees." Tex. Nat. Res.Code Ann. § 91.406. Generally, the reasonableness of attorney's fees is a question of fact to be determined by the fact-finder and the award, if any, must be supported by competent evidence. *Dilston House Condo. Ass'n v. White,* 230 S.W.3d 714, 716 (Tex. App.-Houston [14th Dist.] 2007, no pet.) (citing *Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex.1998)).

■ Factors that a fact-finder should consider when determining the reasonableness of a fee include the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; the fee customarily charged in the locality for similar legal services; the amount involved and the results obtained; the time limitations imposed by the client or by the circumstances; the nature and length of the professional relationship with the client; the experience, reputation, and ability of the lawyer or lawyers performing the services; and whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 818 (Tex. 1997); *Lesikar v. Moon,* 237 S.W.3d 361, 376 (Tex.App.-Houston [14th Dist.] 2007, pet. denied).

■ Presumably the trial court took these factors into consideration when it determined how much to award in fees. But the story of one of these factors—the amount involved and the results obtained—has changed since the trial court made its decision. We have reversed the prejudgment-interest awards, the award of expert-witness fees, and determined that limitations bars some of the damages against Gary. A substantial reduction in the amount of damages a trial court awards warrants a reconsideration by the trial court of the amount of attorney's fees awarded. *See Barker v. Eckman,* 213 S.W.3d 306, 314 (Tex.2006). Based on our reduction today of the appellees' aggregate recovery, we believe that the trial court should reconsider the amount of fees awarded. Accordingly, we sustain Headington's second issue, and Gary's third issue, and remand to the trial court for a new determination of attorney's fees.

## Conclusion

Headington does not appeal the trial court's award to the appellees of royalties Headington placed in the registry of the

court. Therefore, that portion of the judgment is undisturbed. However, we hold that the trial court erred in awarding prejudgment interest and expert-witness fees to the appellees. We therefore reverse those awards and render judgment that the appellees are not entitled to prejudgment interest or expert-witness fees. We also reverse the trial court's order that the appellees recover from Gary the proceeds from the sale of oil and gas, and remand to the trial court to recalculate such proceeds accruing between March 4 and October 1, 2000. Finally, we reverse the award of attorney's fees against both Headington and Gary. We remand the case to the trial court to recalculate accrued proceeds and attorney's fees consistent with this opinion.