**Affirmed and Memorandum Opinion filed May 3, 2022.**



In The

# Fourteenth Court of Appeals

## NO. 14-20-00347-CV

**THISTLE CREEK RANCH, LLC, Appellant**

**V.**

**IRONROC ENERGY PARTNERS, LLC, Appellee**

**On Appeal from the 21st District Court
Washington County, Texas
Trial Court Cause No. 36602**

## MEMORANDUM OPINION

Appellant Thistle Creek Ranch LLC, as the lessor of two mineral leases, and appellee Ironroc Energy Partners, LLC, as the lessee, sued each other for various claims related to the leases. The primary dispute involved whether the leases had terminated and whether Ironroc owed Thistle Creek unpaid proceeds. After the trial court rendered a partial summary judgment in Ironroc's favor that one of the leases was not terminated and ruled at trial that Thistle Creek could not recover certain statutory damages and attorney's fees, the parties nonsuited or settled their

remaining claims without Thistle Creek waiving its right to appeal the two adverse rulings. The trial court signed a final judgment accordingly. Thistle Creek appeals, contending that the trial court erred by granting Ironroc's motion for summary judgment and denying Thistle Creek statutory damages and attorney's fees. We affirm.

## I. VALIDITY OF THE KETTLER LEASE

In its first issue, Thistle Creek challenges the trial court's summary judgment ruling that one of the leases—the Kettler Lease—was valid and not terminated due to a lack of production. Thistle Creek contends that Ironroc was required to show, and failed to conclusively establish for purposes of summary judgment, that there was "production in paying quantities."

## A. Standard of Review and Legal Principles

The general principles that govern the construction of contracts apply to the construction of mineral leases. *Sundown Energy LP v. HJSA No. 3, L.P.*, 622 S.W.3d 884, 888 (Tex. 2021). Summary judgments and the construction of contracts present questions of law that we review de novo. *Id.* When construing a contract, our primary concern is to give effect to the written expression of the parties' intent as expressed within the four corners of the contract. *See id.*; *Endeavor Energy Res., L.P. v. Discovery Operating Inc.*, 554 S.W.3d 586, 595 (Tex. 2018); *see also Andarko Petroleum Corp. v. Thompson*, 94 S.W.3d 550, 554 (Tex. 2002) ("When a lease terminates is always a question of resolving the intention of the parties from the entire instrument." (quotation omitted)). Words must be construed in the context in which they are used, but courts cannot interpret a contract to ignore clearly defined terms. *Sundown*, 622 S.W.3d at 888. We avoid construing contracts in a way that renders contract language meaningless. *Id.* Parties are free to decide their contract's terms, and the law's strong public

policy favoring freedom of contract compels courts to respect and enforce the terms on which the parties have agreed. *Endeavor*, 554 S.W.3d at 595.

The dispute in this case focuses on the habendum clause, which defines the duration of a mineral-lease estate. *See id.* at 597. This clause typically divides the lease's duration into a primary term for a fixed period of time and a secondary term that continues after the primary term expires for "as long thereafter as oil, gas or other mineral is produced." *Id.* (quoting *Andarko*, 94 S.W.3d at 554). Under this type of habendum clause, a lease may continue indefinitely as long as oil or gas is produced, but the lease will automatically terminate if actual production permanently ceases during the secondary term. *Id.* This type of habendum clause requires "actual production in paying quantities." *Andarko*, 94 S.W.3d at 554.

## B.     Terms of the Lease and Undisputed Evidence

In 1989, the parties' predecessors entered into the Kettler Lease, whereby Thistle Creek as the current lessor agrees to lease property to Ironroc as the current lessee for the "purposes and with the exclusive right of exploring, drilling, mining and operating for, producing and owning oil, gas, sulphur and all other minerals." Ironroc agrees "to use reasonable diligence to produce, utilize, or market the minerals capable of being produced" from the property.

The habendum clause provides:

> Unless sooner terminated or longer kept in force under other provisions hereof, this lease shall remain in force for a term of three (3) years from the date hereof, hereinafter called "primary term," and as long thereafter as operations, as hereinafter defined, are conducted upon said land with no cessation for more than ninety (90) consecutive days.

3

"Operations" is defined as:

> operations for and any of the following: drilling, testing, completing, reworking, recompleting, deepening, plugging back or repairing of a well in search for or in any endeavor to obtain production of oil, gas, sulphur or other minerals, excavating a mine, production of oil, gas, sulphur or other mineral, whether or not in paying quantities.

Ironroc attached evidence to its motion for summary judgment, and Thistle Creek does not dispute, that gas has been produced under the lease with no cessation greater than ninety consecutive days. Ironroc conceded that production has not been profitable or in "paying quantities" since at least March 2018.

## C. Analysis

Thistle Creek contends that the trial court "erred in granting summary judgment in favor of Ironroc on the grounds that production in any amount, no matter how small or unprofitable, was sufficient to maintain the Kettler Lease." Thistle Creek relies on well-settled case law interpreting the word "produced" or "production" in a mineral-lease habendum clause to mean production "in paying quantities." *See Clifton v. Koontz*, 325 S.W.2d 684, 690 (Tex. 1959) (citing *Garcia v. King*, 164 S.W.2d 509, 511 (Tex. 1942)). Whether a well is producing in paying quantities depends on a two-pronged analysis: (1) whether the well pays a profit, even small, over operating expenses; and (2) if not, whether, under all the relevant circumstances a reasonably prudent operator would, for the purpose of making a profit and not merely for speculation, continue to operate the well as it had been operated. *BP Am. Prod. Co. v. Laddex, Ltd.*, 513 S.W.3d 476, 482–83 (Tex. 2017).

The habendum clause here, however, does not use the word "produced." It allows the lease to continue past the primary term "as long thereafter as operations, as hereinafter defined, are conducted." And "operations" include "production of

4

oil, gas, sulphur or other mineral, whether or not in paying quantities." Under the plain terms of the lease and undisputed evidence in this case, the lease has not terminated because the well has produced gas "whether or not in paying quantities." *See Ladd Petroleum Corp. v. Eagle Oil & Gas Co.*, 695 S.W.2d 99, 107 (Tex. App.—Fort Worth 1985, writ ref'd n.r.e.) (holding that a mineral lease did not terminate because, by the terms of the lease, "production need not be in paying quantities"); *cf. Ice Bros., Inc. v. Bannowky*, 840 S.W.2d 57, 60 (Tex. App.—El Paso 1992, no pet.) (regarding lease with similar habendum clause and definition of "operations," noting that the parties agreed that "the amount of production was irrelevant since under the definition of operations in the lease, production was not required to be in paying quantities").

Thistle Creek relies on other clauses in the lease, such as the reasonable-diligence covenant and the clause regarding the purpose of the lease to be for "producing" minerals. Thistle Creek contends that these clauses show the parties' intent for production to be in paying quantities. But a court must give meaning to all words in a contract, and a court cannot rewrite the contract to ignore the definition of "operations" that expressly states production need not be in paying quantities. *See Andarko*, 94 S.W.3d at 554–57 (holding that the typical rule requiring actual production to maintain the lease did not apply when the habendum clause maintained the lease if gas "is *or can be* produced"). This habendum clause, which does not require production "in paying quantities," may be read in harmony with a reasonable diligence covenant that gives rise to a claim for damages for breach of the covenant. *See id.* at 560 (noting that breach of an implied covenant, such as reasonable diligence, "does not automatically terminate the estate, but instead subjects the breaching party to liability for monetary damages, or in extraordinary circumstances, the remedy of a conditional decree of

cancellation" (quoting *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 79 (Tex. 1989))). Thistle Creek's reliance on any other case that included a similar purpose or diligence clause is unpersuasive because the habendum clause did not extend the leases based on production "whether or not in paying quantities." *See Hydrocarbon Mgmt., Inc. v. Tracker Expl., Inc.*, 861 S.W.2d 427, 432 (Tex. App.—Amarillo 1993, no writ).

Finally, Thistle Creek contends that, even if production need not be in paying quantities to extend the lease, Ironroc had to conclusively establish that a "reasonably prudent operator would, for the purpose of making a profit and not merely for speculation, continue to operate the well as it had been operated." *See Laddex*, 513 S.W.3d at 483. This test, however, is part of the "two-pronged analysis to answer this question" of "[w]hether a well is producing in paying quantities." *Id.* at 482–83. Because the habendum clause here does not require production in paying quantities, the reasonably-prudent-operator test is inapposite.

The trial court did not err by ruling that the Kettler Lease had not terminated and granting summary judgment to Ironroc. Thistle Creek's first issue is overruled.

## II. STATUTORY DAMAGES AND ATTORNEY'S FEES

In its second issue, Thistle Creek contends that the trial court erred by refusing to award statutory damages and attorney's fees under Section 91.406 of Natural Resources Code.

## A. Standard of Review and Legal Principles

The Natural Resources Code requires lessees such as Ironroc pay lessors such as Thistle Creek proceeds from the sale of oil or gas from a well within certain time periods. *See* Tex. Nat. Res. Code §§ 91.402, 91.403. The statute

creates a cause of action for the nonpayment of oil or gas proceeds or interest on those proceeds. *See id.* § 91.404(c). A lessee may recover minimum statutory damages and attorney's fees:

> If a suit is filed to collect proceeds and interest under this subchapter, the court shall include in any final judgment in favor of the plaintiff an award of:
>> (1) reasonable attorney's fees; and
>>
>> (2) if the actual damages to the plaintiff are less than $200, an additional amount so that the total amount of damages equals $200.

*Id.* § 91.406. The availability of attorney's fees under this statute is a question of law we review de novo. *Headington Oil Co., L.P. v. White*, 287 S.W.3d 204, 215 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *see Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999). Attorney's fees are not available on a claim to quiet title, i.e., a suit to remove cloud from title. *See Moroney v. St. John Missionary Baptist Church, Inc.*, 636 S.W.3d 698, 707 (Tex. App.—Houston [14th Dist.] 2021, no pet. h.).

## B.    Background

Thistle Creek asserted counterclaims against Ironroc to remove a cloud on title and to recover proceeds under Section 91.404. The basis for its claim to remove a cloud of title was that the Kettler Lease and a second lease—the Grotte Lease—had expired under the terms of the leases. Regarding the statutory claim, Thistle Creek alleged that the proceeds were incorrectly calculated after the leases had terminated in October 2016 without considering that Thistle Creek was a cotenant rather than lessor.

7

Shortly before trial, Ironroc released the Grotte Lease,[1] and the parties settled Thistle Creek's claim for proceeds and attorney's fees related to the Kettler Lease. Regardless of when the Grotte Lease terminated,[2] Thistle Creek acknowledged at trial that no proceeds were owed:

> [Thistle Creek's Counsel]: We couldn't bring evidence to the jury that proceeds are currently owed because there are none owed because the well has not generated any net revenues that would be paid to a cotenant, so our actual damages are zero under that. Now, we did sue for whatever proceeds would be due. They just happen to be negative because the well has been such a bad well.
>
> . . . .
>
> I'll stipulate for the record, I've said it many times, there's no net revenue due associated with the relief or termination . . . .
>
> . . . .
>
> Our damages are less than $200. They're negative. They're zero.

Thistle Creek requested statutory damages of $200 and attorney's fees.

In the final judgment, the trial court ordered that Thistle Creek take nothing on its claim for unpaid proceeds and attorney's fees but ruled in favor of Thistle Creek on its claim to remove a cloud on title on the Grotte Lease: "[Thistle Creek's] mineral interest in the land described in the Grotte Lease is free and clear of the Grotte Lease and the Grotte Lease is removed as a cloud on title to said mineral interests."

---

[1] The lease provides:

Lessee may at any time and from time to time execute and deliver to lessor or file for record a release of this lease as to any part or all of said land or of any mineral or horizon thereunder, and thereby be relieved of all obligations as to the released acreage or interest.

[2] The Grotte Lease utilized the same habendum clause as the Kettler Lease, discussed above, but in the definition of "operations," the phrase "whether or not in paying quantities" was struck through.

## C. Analysis

Thistle Creek contends that it is entitled to statutory damages and attorney's fees because it (1) filed a suit to collect proceeds under Section 91.404, and (2) the final judgment was "in favor of" Thistle Creek because the cloud on title from the Grotte Lease was removed. Thistle Creek contends that its statutory claim was intertwined with its title claim, and it obtained a "favorable" judgment on the title claim. *See Headington*, 287 S.W.3d at 215–16 ("Applying the plain meaning of the word 'favorable,' we consider any judgment favorable to the plaintiff when he obtains a measure of relief which leaves him in a better position than he held before filing suit.").

Although Thistle Creek obtained a favorable judgment on its quiet title claim, Thistle Creek did not obtain a favorable judgment on its claim "to collect proceeds and interest." *See Garcia v. Genesis Crude Oil, L.P.*, No. 13-14-00727-CV, 2016 WL 1732436, at *4 (Tex. App.—Corpus Christi Apr. 28, 2016, no pet.) (mem. op.) (holding that because the lessee had paid all royalties and interest, the lessor's claim for unpaid royalties and interest failed as a matter of law, and no final judgment in favor of the lessor existed to entitle her to the statutory damages or attorney's fees). Thistle Creek cites no case in which a party was allowed to recover statutory damages and attorney's fees under Section 91.406 despite failing to recover any actual damages on the claim. *See Headington*, 287 S.W.3d at 216 (allowing recovery of attorney's fees because the trial court awarded unpaid royalties); *see also Prize Energy Res., L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537, 570–71 (Tex. App.—San Antonio 2011, no pet.) (same). We have found none. The only reasonable interpretation of the statute is that the "judgment in favor of the plaintiff" must be on the "suit . . . to collect proceeds and interest." *See* Tex. Nat. Res. Code § 91.406. It is not enough that a party allege a Section 91.404

9

claim in their petition and then obtain a favorable judgment on some other claim, as here. *See EOG Res., Inc. v. Wagner & Brown, Ltd.*, 202 S.W.3d 338, 347–48 (Tex. App.—Corpus Christi 2006, pet. denied) (affirming denial of attorney's fees under Section 91.406 although the party obtained a judgment in its favor declaring the party's interest under the lease), *cited with approval in Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 356 (Tex. 2020) ("The *EOG* court correctly held that the trial court could refuse to award attorneys' fees pursuant to section 91.406 because the party's alternative claim had not yet resulted in a final judgment."); *see also Westport Oil & Gas Co. v. Mecom*, 514 S.W.3d 247, 256 (Tex. App.—San Antonio 2016, no pet.) (holding that the royalty owners were not entitled to attorney's fees under Section 91.406 because the trial court granted summary judgment against the royalty owners on their claims that the defendant violated provisions of the Natural Resources Code).

The trial court did not err by refusing to award statutory damages and attorney's fees under Section 91.406. Thistle Creek's second issue is overruled.

## III. CONCLUSION

Having overruled both of Thistle Creek's issues, we affirm the trial court's judgment.


/s/    Ken Wise
        Justice


Panel consists of Justices Wise, Spain, and Hassan.

10