ACCEPTED
04-15-00436-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
5/9/2016 10:16:58 PM
KEITH HOTTLE
CLERK

## NO. 04-15-00436-CV

IN THE FOURTH COURT OF APPEALS
AT SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
5/9/2016 10:16:58 PM
KEITH E. HOTTLE
Clerk

BRYAN SMITH D/B/A VISION DESIGN AND BUILD

APPELLANT

V.

ROBERT OVERBY AND TERESA OVERBY

APPELLEES

From the 438th District Court of Bexar County, Texas
Trial Court No. 2008-CI-02799
Honorable Gloria Saldana, Judge Presiding

# REPLY BRIEF OF APPELLANT, BRYAN SMITH D/B/A VISION DESIGN AND BUILD

THORNTON BIECHLIN REYNOLDS & GUERRA
Marcella A. Della Casa
State Bar No. 24009862
100 N.E. Loop 410, Suite 500
San Antonio, Texas 78216
(210) 581-0288 – Phone
(210) 525-0666 – Fax
MDellaCasa@thorntonfirm.com

POZZA & WHYTE, PLLC
Dan Pozza
State Bar No. 16224800
Lorien Whyte
State Bar No. 24042440
239 E. Commerce Street
San Antonio, TX  78205
(210) 226-8888 – Phone
(210) 222-8477 – Fax
danpozza@pozzaandwhyte.com
lorienwhyte@pozzaandwhyte.com

ATTORNEYS FOR APPELLANT,
BRYAN SMITH D/B/A VISION DESIGN AND BUILD

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS..............................................................................................ii

INDEX OF AUTHORITIES.......................................................................................iii

OBJECTIONS TO BRIEF AND STATEMENT OF FACTS....................................1

SUMMARY OF THE ARGUMENT ........................................................................2

REPLY ARGUMENT ...............................................................................................3

    I.      The numerous charge issues warrant a new trial. ...............................3

           A.     Vision was entitled to a jury question as to the reasonableness of the offer of repair..............................3

           B.     There was sufficient evidence to require that the trial court submit a mitigation instruction to allow the jury to consider whether the Overbys failed to mitigate their damages................................................................................8

    II.     The Overbys are incorrect that simply the existence of a defect is sufficient—instead, the true test is whether Vision failed to live up to its warranty by not trying to cure the defect. .....................11

    III.    At a minimum, the suit must be remanded for a new trial because the Overbys' evidence to support the lump sum award for cost of repair is legally and factually insufficient. ........................13

    IV.    Attorneys' fees must be reversed or reduced. ....................................24

    V.    The Overbys fail to respond to Vision's complaint regarding the error on the face of the judgment. .......................................................27

CONCLUSION & PRAYER.......................................................................................27

CERTIFICATE OF SERVICE ..................................................................................29

CERTIFICATE OF COMPLIANCE.........................................................................30

# INDEX OF AUTHORITIES

**Cases**                                                                                   **Page**

*Barker v. Eckman,*
213 S.W.3d 306 (Tex. 2006) ................................................................ 26

*Cal-Tex Lumber Co., Inc. v. Owens Handle Co., Inc.,*
989 S.W.2d 802 (Tex. App.—Tyler 1999, no pet.) ................................ 23

*Columbia Rio Grande Healthcare, L.P. v. Hawley,*
284 S.W.3d 851 (Tex. 2009) .................................................................. 8

*Elbaor v. Smith,*
845 S.W.2d 240 (Tex. 1992) ............................................................ 7,8

*First State Bank v. Keilman,*
851 S.W.2d 914 (Tex. App.—Austin 1993, writ denied) ....................... 23

*Headington Oil Co., L.P. v. White,*
287 S.W.3d 204 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ........ 26

*Hulcher Services, Inc. v. Emmert Indus. Corp.,*
No. 02-14-00110-CV, 2016 WL 368180
(Tex. App.—Fort Worth Jan. 28, 2016, no pet. h.) ........................... 26, 27

*Jones v. Pesak Bros. Const., Inc.,*
416 S.W.3d 618 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ........... 12

*Lone Starr Multi-Theatres, Ltd. v. Max Interests, Ltd.,*
365 S.W.3d 688 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ........... 26

*Maritime Overseas Corp. v. Ellis,*
971 S.W.2d 402 (Tex. 1998) ................................................................. 13

*McGinty v. Hennen,*
372 S.W.3d 625 (Tex. 2012) ..................................................... 14, *et seq.*

*Mustang Pipeline Co. v. Driver Pipeline Co.,*
134 S.W.3d 194 (Tex. 2004) ..................................................... 14, *et seq.*

*O'Donnell v. Roger Bullivant of Texas, Inc.,*
940 S.W.2d 411 (Tex. App.—Fort Worth 1997, writ denied) .................. 6

*Sanders v. Constr. Equity, Inc.*,
    45 S.W.3d 802 (Tex. App.—Beaumont 2001, pet. denied) ..................... 12

*Smith-Reagan & Associates, Inc. v. Fort Ringgold Limited*,
    No. 04-13-00608-CV, 2015 WL 1120398
    (Tex. App.—San Antonio Mar. 11, 2015, pet. filed) .............................. 23

*Whitecotton v. Silverlake Homes, L.L.C.*,
    No. 09-08-00065-CV, 2009 WL 2045224
    (Tex. App.—Beaumont July 16, 2009, no pet.)
    (mem. op.)........................................................................................ 12, 13

**Statutes & Rules**

Texas Property Code Annotated § 27.004(e)(2).................................. 11, 24, 25
Texas Property Code Annotated § 27.004(h) ...........................................................6
Texas Property Code Annotated § 27.006 .................................................... 12, 13
Texas Rule of Appellate Procedure 38.1(g)............................................................1
Texas Rule of Appellate Procedure 38.1(i) ...........................................................1
Texas Rule of Appellate Procedure 38.2 ...............................................................1
Texas Rule of Appellate Procedure 44.1 ...................................................... 8, 24
Texas Rule of Civil Procedure 278........................................................................7

**TO THE HONORABLE FOURTH COURT OF APPEALS:**

Appellant, BRYAN SMITH D/B/A VISION DESIGN AND BUILD, files this Reply Brief of Appellant, and respectfully shows the Court as follows:

**OBJECTIONS TO BRIEF AND STATEMENT OF FACTS**

Texas Rule of Appellate Procedure 38.1 requires that the statement of facts and the argument be supported by appropriate citations to authorities and the record. TEX. R. APP. P. 38.1(g),(i); 38.2 (applying Rule 38.1 to Appellee's Brief). Throughout Appellees' Brief, the Overbys provide propositions of law and assertions of fact with no record references. This Court and Vision should not be required to pour through this extensive record to verify or respond to assertions of law and fact not supported by record references. As such, Vision objects to all assertions of law and fact not supported by appropriate citations to the law or the record.

## SUMMARY OF THE ARGUMENT

This jury verdict resulted from an improperly charged jury and in the absence of appropriate evidence supporting the jury's findings and damage award. The Overbys' response to Vision's brief fails to address many of Vision's arguments in support of this Court either entering a take nothing judgment or remanding for a new trial. Rather, the Overbys rely on unsupported assertions of law and fact and gloss over what was lacking in this trial—appropriate evidence and a proper jury charge. The Overbys instead hope this Court will look past all of the errors and affirm, but an affirmance cannot be had on this record.

At a minimum, the jury's lump sum damage award cannot be upheld. The Supreme Court has been quite clear that a plaintiff cannot simply take the stand and testify that he incurred out-of-pocket expenses in support of recovering costs of repair. And, <u>all</u> of the cost of repair damages have to be supported by competent evidence that each cost is reasonable and necessary. By asking for a lump sum award, the Overbys needed to direct this Court to sufficient evidence to support the whole award, but they cannot and did not in their brief.

**REPLY ARGUMENT**

**I.    The numerous charge issues warrant a new trial.**

**A.    Vision was entitled to a jury question as to the reasonableness of the offer of repair.**

Vision complains the jury was deprived of proposed Question 6 that would have afforded the jury the opportunity to determine if Vision made a reasonable offer in accordance with Section 27.004(e) of the RCLA. *Appellant's Brief* at 12. The Overbys' sole response is that the offer was untimely, and, therefore, it was proper to prevent the jury from considering the reasonableness of the offer in accordance with the RCLA. *Appellees' Brief* at 9. However, in doing so, the Overbys fail to cite to the record in support of their various allegations and ignore the plethora of evidence in the record establishing the offer of repair was timely.

The TRCC issued remanded findings on November 10, 2008, which was mailed to Vision on November 12, 2008. RR Part 1, Plaintiffs' Exh. 16, pg. 378. Both the Overbys and Vision were provided an opportunity to appeal the remanded findings on or before the 15th day of receipt of the findings. *Id.* On December 10, 2008, Vision mailed the TRCC a letter notifying the TRCC of the current status of the project at the Overbys' residence. RR Part 2, Defendant's Exh. 48, pg. 99. During this time period, Vision was already working with the Overbys to schedule repair-work to be made at the Overbys, but the Overbys again stopped Vision from completing such work. RR Part 2, Defendant's Exh. 48, pg. 102.

-3-

On December 30, 2008, Vision submitted a SIRP Follow-up Form to the TRCC, updating the TRCC on the status of work by providing that: (1) **repairs were offered to the homeowner**, (2) the homeowner accepted the offer of repairs, (3) repairs have been made to the property, (4) the repairs included all recommendations made in the final nonappealable report but were still ongoing, and (5) repairs were not yet completed because Vision was awaiting an engineered grading plan <u>per the homeowners' request</u> prior to continuing repairs. RR Part 2, Defendant's Exh. 48, pg. 106.

Throughout the time the TRCC was conducting its third party inspections and this matter was winding its way through the administrative process, Vision continued to communicate with the Overbys, continued to honor its warranty and the construction contract, and continued to try to fix the repairs sought by the Overbys in an attempt to ensure their satisfaction with Vision's work. RR Part 2, Defendant's Exh. 48, pg. 195. Between November 12, 2008, and February 8, 2009, Plaintiffs and Vision corresponded almost daily via email regarding proposed repairs and scheduling. RR Part 2, Defendant's Exh. 48. However, the Overbys repeatedly denied Vision reasonable access to the home to complete the repairs. RR Part 2, Exh. 48, 102-03.

To memorialize the parties' agreement on Vision's offer of repair, on February 11, 2009, Vision sent a written offer of repair to the Overbys via certified

mail. RR Part 2, Defendant's Exh. 48, pg. 111. It is clear from the Overbys' return correspondence of February 12, 2009 that they agreed that Vision had either timely submitted an offer of repair or the parties had agreed in writing to an extension:

> I am sending this letter as per the Texas Administrative Code, Title 10, Part 7, Chapter 313, Rule §313.22 which states, "(a) If the homeowner considers the builder's offer to repair under §313.21 of this chapter to be unreasonable, the homeowner shall notify the builder, in writing, on or before the 25th day after the date the homeowner receives the offer, and shall provide, in detail, any reason(s) the homeowner finds the offer to be unreasonable".

RR Part 1 Exh. 17, pg. 384. The language in the Overbys' letter is clear—they were responding to Vision's "offer of repair." *Id.* This is further confirmed by a series of letters back and forth between the parties.

On February 19, 2009, within 10 days as required by the TRCC, Vision sent the Overbys a supplemental offer of repair in response to the Overbys reply letter dated February 12, 2009. RR Part 2, Defendant's Exh. 48, pg. 157 (specifically indicating "This letter is in response to your reply dated February 12, 2009 to the previously proposed "Update" and "Offer to Repair"). On February 27, 2009, the Overbys replied to Vision's February 19, 2009 supplemental offer of repair, specifically providing that the Overbys were sending the "letter in response to the aforementioned letter [dated February 19, 2009] from Vision Design and Build considered to be a 'Supplemental Written Offer to Repair'" as per section 313.23 of the TRCC. RR Part 2, Defendant's Exh. 48, pg. 182. The Overbys' letter further

instructed Vision that his "response to this partial acceptance is expected within the time frame set and required by the TRCC." *Id.*

Section 27.004(h) of the Texas Property Code provides that a homeowner and a contractor may agree in writing to extend any time period described in Chapter 27. TEX. PROP. CODE ANN. § 27.004(h). The Fort Worth Court of Appeals was presented with a similar issue in *O'Donnell v. Roger Bullivant of Texas, Inc.*, 940 S.W.2d 411, 419 (Tex. App.—Fort Worth 1997, writ denied). In *O'Donnell*, the homeowners' letter expressly gave the contractor 60 days to respond to their letter. *Id.* The court provided that "[t]he O'Donnells cannot now be allowed to claim an offer of repair that was received within the time period that they specified was untimely." *Id*. at 419. Thus, the court found the contractor's offer to repair timely. *Id*.

The parties' ongoing correspondence evidences their agreement to extend the time period to make and accept or reject an offer. RR Part 2, Defendant's Exh. 48 (numerous letters within this exhibit). Section 27.004(h) explicitly permits such agreement. TEX. PROP. CODE ANN. § 27.004(h). As such, the Overbys "cannot now be allowed to claim an offer of repair that was received within the time period that they specified was timely." *O'Donnell*, 940 S.W.2d at 419. Accordingly, Vision's offer of repair dated February 19, 2009, that was agreed to by the Overbys

and provided for by Vision within the specific deadlines the Overbys provided in their responsive letters, was timely.

As such, the Overbys are incorrect that the trial court was not required to submit Vision's proposed Question 6 that would have allowed the jury to determine if the February 19, 2009 offer of repair was "reasonable." The plain language of Rule 278 bound the trial court to submit the question for the jury's consideration since Vision's pleadings and the evidence supported such a submission. *See* TEX. R. CIV. P. 278 (A trial court is required to submit to the jury the questions, instructions, and definitions "which are raised by the written pleadings and the evidence."); *Elbaor v. Smith*, 845 S.W.2d 240, 244 (Tex. 1992) (As to the trial court's failure to submit a *question* to the jury, the Supreme Court has been clear that Rule 278 "imposes a substantive, nondiscretionary directive to trial courts requiring them to submit requested questions to the jury if the pleadings and any evidence support them."); SCR 3; RR Part 2, Defendant's Exh. 48, pg. 157.

The Overbys in no way dispute that Vision made several offers of repair, and specifically the February 19, 2009 offer. Instead, they now want to, although they treated the offer timely by the plain language in their own letters, argue the offer of repair was not timely so that they can avoid the jury having the opportunity to consider whether the offer made was reasonable. Vision clearly met its burden

by asking that the trial court submit for the jury's consideration whether that offer was reasonable. *Appellant's Brief* APPX Tab 4; CR 484. Because the trial court failed to submit the question for the jury to determine if the offer was "reasonable," the trial court could not conduct a post-verdict reduction of the <u>damages</u> and <u>attorneys' fees</u> in accordance with Section 27.004(e). The error was harmful as it prevented Vision from obtaining a reduction of the damages and attorneys' fees, which clearly caused the rendition of an improper judgment. *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 855 (Tex. 2009); TEX. R. APP. P. 44.1. Such error necessitates a remand for a new trial. *Elbaor*, 845 S.W.2d at 252.

**B. There was sufficient evidence to require that the trial court submit a mitigation instruction to allow the jury to consider whether the Overbys failed to mitigate their damages.**

This whole suit was about whether the Overbys mitigated their damages or whether they instead tried to circumvent the RCLA and the TRCC and move into costly litigation. The Overbys jumped ship from their agreement to allow Vision to complete the repairs they agreed to on March 30, 2009 when they filed suit just one day later on March 31, 2009, and as a result, claimed almost $100,000 attorneys' fees and almost $75,000 in damages unsupported by the evidence. The mitigation instruction Vision proposed would have allowed the jury to determine if the Overbys failed to mitigate their damages. *Appellant's Brief* at 15. Now,

instead of recognizing the plethora of evidence in the record, the Overbys simply focus on the November and December mitigation proposals to essentially argue that they were too close in time to trial to support the instruction and that the offers would not have made the Overbys whole. *Appellees' Brief* at 12-13. But, had the mitigation instruction been submitted, the jury would have had the ability to determine whether the Overbys failed to take reasonable action to mitigate the damages. The proposed instruction was as follows:

> Do not award any damages caused by the failure of a person other than Bryan Smith d/b/a Vision Design and Build or an agent, employee, or subcontractor of Bryan Smith d/b/a Vision Design and Build to take reasonable action to mitigate the damages.

CR 446.

Despite the plethora of evidence in the record, the Overbys sole response is that there was no evidence to support such a submission. Yet, the record is replete with Vision's numerous and ongoing offers to make the repairs identified by the TRCC, and a series of settlement and buy-back offers, some without even requesting a full and final release:

| | |
|---|---|
| November 19, 2009 | Vision Offer to Repair/Settlement, including buy-back offer (RR Part 2, Defendant's Exh. 48, pg. 230) |
| December 4, 2009 | Vision Supplemental Offer to Repair/Settlement (RR Part 2, Defendant's Exh. 48, pg. 254) |

| | |
|---|---|
| March 11, 2010 | Vision Buy-Back Offer (RR Part 2, Defendant's Exh. 48, pg. 278) |
| March 31, 2010 | Vision Supplemental Offer of Repair (RR Part 2, Defendant's Exh. 48, pg. 281) |
| November 25, 2014 | Vision Mitigation Proposal (offer of repair/settlement offer) (RR Part 2, Defendant's Exh. 48, pg. 292) |
| December 6, 2014 | Vision Second Mitigation Proposal (buy-back offer) (RR Part 2, Defendant's Exh. 48, pg. 304) |

For instance, the November 25, 2014 offer of repair, if accepted, would have allowed Vision to finish making the repairs, rather than allowing the Overbys to recover <u>cash</u> from Vision in lieu of the repairs (completely contrary to the intent of the RCLA and the TRCC). RR Part 2, Defendant's Exh. 48, pg. 292. Likewise, the jury should have been able to determine if Vision's buy-back offer was reasonable and failure to accept the offer equated to the Overbys' not mitigating their damages as the RCLA contemplates. RR Part 2, Defendant's Exh. 48, pg. 304. Vision was entitled to have the jury consider, based on these offers of repair and mitigation offers, whether the Overbys failed to mitigate their damages.

The record is also replete with evidence that the Overbys declined Vision's repeated attempts to finish the repair work, as the TRCC contemplates the parties will do, and when the Overbys did finally authorize some of the repair work they often delayed and thwarted the work. RR Part 2, Defendant's Exh. 48, pgs. 102-03,

214, 225; RR Part 2, Defendant's Exh. 49, pgs. 329-331, 336, 339; 6 RR 183-85, 190-91. And, in addition to limiting damages recoverable, Section 27.004 also limits the attorneys' fees that are recoverable if the Plaintiff "does not permit the contractor or independent contractor a reasonable opportunity to inspect or repair the defect pursuant to an accepted offer of settlement." TEX. PROP. CODE ANN. § 27.004(e)(2). There is clearly evidence that the damages sought and obtained by the Overbys were increased by their failure to allow Vision to complete the work and by their failure to accept the mitigation proposals.

Vision was prevented from accomplishing what the RCLA contemplates— that the repair work will be done instead of the homeowner seeking an award of money damages and attorneys' fees resulting from litigation. The result was years of litigation. All the while, even counsel for the Overbys admitted on the record that "the jury is going to have to determine whether or not we unreasonably failed to mitigate our damages and what damages were caused from the failure to mitigate." 3 RR 12. The jury should have been given the ability to make this determination, and the trial court improperly removed that ability from the jury.

**II.** **The Overbys are incorrect that simply the existence of a defect is sufficient—instead, the true test is whether Vision failed to live up to its warranty by not trying to cure the defect.**

The Overbys' proposition in support of the judgment is "the fact [that defects] exist is evidence of a breach of warranty, breach of contract and

negligence." *Appellees' Brief* at 16. But, such an argument wholly ignores the number of cases Vision relied upon that clearly hold that a construction defect does not by itself equate to liability without more. *Appellants' Brief* at 18 (citing *Whitecotton v. Silverlake Homes, L.L.C.*, No. 09-08-00065-CV, 2009 WL 2045224, at * 7 (Tex. App.—Beaumont July 16, 2009, no pet.) (mem. op.) (holding the mere existence of damage is not enough to impose liability on a builder); *see also Jones v. Pesak Bros. Constr., Inc.*, 416 S.W.3d 618, 624 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (holding, "the existence of a construction defect does not have the same meaning as the existence of a defendant's liability for a construction defect."); *Sanders v. Constr. Equity, Inc.*, 45 S.W.3d 802, 803 (Tex. App.—Beaumont 2001, pet. denied)(rejecting appellee's argument that the Court "impose strict liability for any construction defect, whether or not, for example, the defect...constitutes a breach of contract" and finding "nothing in the statute that imposes strict liability for a construction defect").

The contractor must have failed by not attempting to live up to its warranty by trying to cure the defect. *See* TEX. PROP. CODE ANN. § 27.006; *Whitecotton*, 2009 WL 2045224, at *7. When the evidence demonstrates the contractor is willing to repair the defect, but the homeowner prevents the contractor from remedying the defect and conducting repair work, then the contractor is not liable for any damages that might be a consequence of the unrepaired construction defect.

-12-

*Whitecotton*, 2009 WL 2045224, at *7. While the conduct of the Overbys is not as extreme as it was in *Whitecotton*, here the evidence is clear that Vision made ongoing and repeated efforts to make the remaining repairs, but Vision was constantly delayed or thwarted in those efforts. *Appellant's Brief* at 19-21.

A homeowner cannot avoid the clear directives of the RCLA by making a claim for repairs and then not allowing the repairs to be made. *See* TEX. PROP. CODE ANN. § 27.006; *Whitecotton*, 2009 WL 2045224, at *7. Therefore, the damages relating to the remaining repairs were not attributable to Vision after it was denied the ability to cure the problems, but instead were attributable to the Overbys. While Vision requests a take-nothing judgment, at a minimum, the evidence in support of the finding is so against the great weight and preponderance of the evidence, that it is clearly wrong and unjust, and, therefore, warrants a new trial. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406–07 (Tex. 1998).

**III.    At a minimum, the suit must be remanded for a new trial because the Overbys' evidence to support the lump sum award for cost of repair is legally and factually insufficient.**

The Overbys recognize their burden at trial was to establish both that the damages are (1) reasonable, and (2) necessary. *Appellees' Brief* at 17-23. Yet, in responding to Vision's complaint, they ignore what evidence was required to meet the two-fold test.

This Court's analysis is guided by *McGinty v. Hennen*, 372 S.W.3d 625, 628-29 (Tex. 2012). The Supreme Court has been clear that a damage award for cost of repairs cannot be upheld unless there is evidence in the record establishing the repair costs are "reasonable" and "necessary." *McGinty*, 372 S.W.3d at 627. In *McGinty*, the Supreme Court was confronted with an expert's testimony on repair costs where the expert used the "Exactimate" program "that's used widely in the insurance industry." *Id.* at 627. The expert gave specific testimony that "[t]he program had a Houston price guide, which he compared with Corpus Christi and found to be 'within a percent or two difference.'" *Id.* He gave further testimony that "because not every price issued by the program is right, 'we have to cross-reference and double check all our pricing,'" and that "some of the other costs came from subcontractors or historical data or jobs." *Id.* While the court of appeals found this evidence legally sufficient that the repair costs were "reasonable," the Supreme Court disagreed. *Id.*

The plaintiff argued that the expert's testimony was sufficient because he testified extensively about how he derived his pricing estimate. *Id.* at 628. But the Court concluded that while that may explain how the figure for the repair damages was derived, it did not make the figure "reasonable." *Id.* The Court equated the evidence to that which was found insufficient in *Mustang Pipeline*. *Id.* at 627 (citing *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 194, 200 (Tex.

-14-

2004)).  The *McGinty* Court held, "[e]stimated out-of-pocket expenses, like paid out-of-pocket expenses, do not establish that the cost of repair was reasonable. Some other evidence is necessary."  *Id.*  There must be evidence of the actual "reasonableness" of the estimated cost.  *Id.*

The rule enunciated in *McGinty* is clear: to establish costs of repair damages, "the plaintiff must show more than simply 'the nature of the injuries, the character of and need for the services rendered, and the amounts charged therefor.'"  *Id.* at 627.  "[S]ome other 'evidence showing that the charges are reasonable' is required."  *Id.*

Further, *Mustang Pipeline* made it clear that evidence of **out-of-pocket costs** alone "[do] not establish that the damages were reasonable and necessary."  *Mustang Pipeline*, 134 S.W.3d at 201.  The Court found it "well settled that proof of the amounts charged or paid does not raise an issue of reasonableness, and recovery of such expenses will be denied in the absence of evidence showing that the charges are reasonable."  *Id.*

It was the Overbys' burden at trial to prove that the damages sought are reasonable and necessary.  *Id.* at 200; *McGinty*, 372 S.W.3d at 627.  "Evidence of the amounts charged and paid, standing alone, is no evidence that such payment was reasonable and necessary."  *Mustang Pipeline*, 134 S.W.3d at 200-01.

-15-

Furthermore, estimated costs to repair without more do not establish the estimate is reasonable. *McGinty*, 372 S.W.3d at 627.

As fully detailed in Appellant's Brief, the Overbys failed to meet their burden at trial to support the lump sum award. And, in their Brief on appeal, the Overbys simply ignore the burden that the Supreme Court has made clear must be met in order to recover cost of repair damages.

### 1. Foundation Estimate: $18,969.00

Vision challenged this estimate on both grounds that it was not reasonable or necessary. *Appellant's Brief* at 23, 28.

The Overbys' sole response to the "reasonableness" challenge is to argue that the cost of foundation repair was supported by the testimony of Adolfo Rodriguez. *Appellee's Brief* at 19. Yet, as Vision pointed out in its brief, Rodriguez was questioned as follows:

> Q. And the total cost for this, if it was $18,969, I'm going to guess if you pay it promptly, you get a discount to 17,000. Was that the fair and reasonable and necessary cost to repair the foundation that existed on this home as of this date?
>
> A. Yes.

5RR14; RR Part1, Exh. 42, pg. 468. The Overbys make no effort to show how this brief testimony amounts to establishing "reasonableness" of the estimated cost of repair. Instead, they ignore the Supreme Court's clear mandate that it was their burden to prove reasonableness, not Vision's burden to contradict the testimony.

-16-

*Appellees' Brief* at 19; *McGinty*, 372 S.W.3d at 627 (holding it is plaintiff's burden to establish cost of repair damages sought are reasonable and necessary.)

And, in fact, Rodriguez testified on cross-examination that "I don't do the calculations, I'm sorry." 5 RR 13. And, he agreed that he was unsure whether the $18,969.00 amount was for option 2 or the grand total of option 1 and option 2 since the estimate gave two options. 5 RR 28-29. This further supports the argument that the reasonableness of the $18,969.00 was never established as Rodriguez did not even know where the amount came from.

The only testimony regarding the estimate—testimony from Rodriguez—is in clear violation of *McGinty* since it provides no more than "'the nature of the injuries, the character of and need for the services rendered, and the amounts charged therefor,'" and in fact does not even rise to that level. *McGinty*, 372 S.W.3d at 627. It is simply counsel's statement of the cost and a conclusory statement that the cost is reasonable and necessary, that is then responded to by an employee of the foundation company as simply "Yes." 5RR14. There was no other evidence "showing that the charges are reasonable" as required. *Id.* And, the evidence, if any, falls far below even the evidence the Supreme Court held in *McGinty* was not sufficient. *See McGinty*, 372 S.W.3d at 627.

Vision also challenged the evidence as not being sufficient because it was not established that the work was "necessary." *Appellant's Brief* at 31.

-17-

Astonishingly, in an attempt to establish there was a necessity for foundation repairs that existed at the time of trial to support the $18,969.00 *estimate for future repairs*, the Overbys briefly refer this Court to three exhibits—all of which are letters written <u>years</u> before trial and in no way establish repairs were necessary at the time of trial. *Appellees' Brief* at 23.

Exhibit 56 is the <u>October 5, 2009</u> letter written by Louis Faraklas to Vision, which provides absolutely no evidence of the necessity of further foundation repairs as of late 2014. RR Part 1, Plaintiffs' Exh. 56, pg. 546. Likewise, Exhibit 44 is the March 15, 2010 letter written by Louis Faraklas to the City, and also provides no evidence of the necessity of further foundation repairs as of the time of trial. RR Part 1, Plaintiffs' Exh. 44, pg. 473. And, astoundingly, the Overbys rely on the Blake Engineering Report from August of 2007, over <u>seven years</u> before trial. RR Part 1, Plaintiffs' Exh. 48, pg. 482.

Finally, the Overbys briefly rely on the purported testimony of Mr. Rodriguez without any citation to the record. *Appellees' Brief* at 22. In fact, his testimony in no way established that further foundation repairs were necessary, as he admitted that he did not do his calculations in accordance with the necessary standards (referred to as ASCE). 5 RR 20-23.

At the time of trial, the only evidence presented was that of Phil King that established that **<u>at that point</u>** there were no more foundation repairs needed, as

repairs had already been made, in order to meet the TRCC standards. 7 RR 123-25. None of the evidence the Overbys briefly referred to in their Brief, and many without any citation to the record, establishes that at the time of trial there were foundation repairs that were "necessary."

### 2. Landscaping Out-of-Pocket: $8,987.38

Vision challenged the Overbys' request for $8,987.38 for out-of-pocket landscaping costs that Mr. Overby testified he incurred based on the cost not being established as reasonable or necessary. *Appellant's Brief* at 23.

The Overbys ignore Visions' complaint that the cost was not proven to be reasonable, and wholly ignore the case law relied on by Vision that out-of-pocket expenses alone do not establish the damages were reasonable and necessary. *Mustang Pipeline*, 134 S.W.3d at 201; *McGinty*, 372 S.W.3d at 627-28. Instead, the Overbys' sole response is that the cost was "necessary" because of the failure of Vision to properly grade the home. *Appellees' Brief* at 20. But, once again, the Overbys give no citation to the record to support this assertion, and instead simply cite to the invoice itself. *Id.* Under *McGinty* and *Mustang Pipeline*, the evidence is insufficient to support out-of-pocket expenses of $8,987.38 for landscaping costs.

### 3. Exterior Work Out-of-Pocket: $5,000

Vision challenged the request for $5,000 for exterior work by Countywide

Exteriors that Mr. Overby testified he incurred based on the cost not being established as reasonable. *Appellant's Brief* at 24. The invoice <u>was never admitted into evidence</u>, and Mr. Overby simply testified that "I paid about $5100, 5200, somewhere around there." 4 RR 115.

In response, the Overbys now argue that in fact the invoice was admitted into evidence, but again fail to cite any part of the record that establishes it was admitted. *Appellees' Brief* at 19. To the contrary, in its Brief, Vision cited to 1 RR 9, which provides this Court with a list of those exhibits that were in fact admitted into the record. *Appellant's Brief* at 24 (citing 1 RR 9). Nowhere in the list of *admitted* exhibits is Exhibit 43.

Additionally, as previously addressed, out-of-pocket expenses alone do not establish the damages were reasonable and necessary. *Mustang Pipeline*, 134 S.W.3d at 201; *McGinty*, 372 S.W.3d at 627-28. Again, the evidence is insufficient to support out-of-pocket expenses of $5,000 for purported exterior work.

### 4. Plumbing Estimate: $5,750.00

Vision challenged the request for $5,750.00 for the plumbing estimate by Quartermoon Plumbing based on the cost not being established as reasonable or necessary. *Appellant's Brief* at 24, 30.

The very estimate that the Overbys sought cost of repair damages for is nowhere in the record. *Appellant's Brief* at 24. While the Overbys appear to acknowledge they failed to produce or admit a written plumbing estimate, they instead turn to the testimony of Dario Armendariz. *Appellees' Brief* at 20. But, as specifically addressed in Appellant's Brief, the conclusory and very brief testimony of Dario Armendariz in no way established the estimated cost of repair is reasonable and necessary. *Appellant's Brief* at 24. And again, the evidence the Overbys rely on falls far short of what was present in *McGinty* and the Supreme Court still held it was insufficient to support the damage award. *McGinty*, 372 S.W.3d at 627. It was the Overbys' burden to establish the estimate for the cost of repair for the plumbing work was "reasonable." *Mustang Pipeline*, 134 S.W.3d at 201.

The Overbys respond to Vision's challenge that they did not establish the plumbing work was necessary by simply arguing that "[t]he damage award is supported by this breach of contract claim regardless of warranty provisions." *Appellees' Brief* at 21. While providing absolutely no citations to the record, they argue some of the plumbing couplings had been recalled. *Id.* But nowhere do they point this Court to any evidence in the record that establishes that the alleged $5,750.00 in plumbing work was necessary.

### 5. Bathroom Estimate: $8,178.00

Vision challenged the request for $8,178.00 for the bathroom estimate based on the cost not being established as necessary. *Appellant's Brief* at 28.

The Overbys respond that there was evidence of a shower pan leak in 2006, and because the alleged defect was discovered within the warranty period (which Vision disagrees), it is a recoverable damage. *Appellees' Brief* at 29. But again, this does not establish the estimate for the cost of repair is necessary. As detailed in Vision's Brief, Mr. Overby admitted that as of 2009 (well outside the one-year warranty period), there was no leak at that time. *Id.* (citing 5 RR 93-94). The Overbys fail to respond to this argument in their brief.

The jury award of $72,884.00 in a lump sum award for cost of repair is not supported by evidence that the costs were reasonable and necessary. The Overbys fail to address how at least two of the amounts relied on for cost of repair damages that Mr. Overby testified were his out-of-pocket expenses ($8,987.38 for landscaping and $5,000 for Countywide exteriors= total of $13,987.38) can support the damage award when the Supreme Court has been very clear that such evidence is in no way sufficient. *Mustang Pipeline*, 134 S.W.3d at 201. And, two of the estimates ($5,000 for Countywide exteriors and $5,750 for plumbing= $10,750.00)

were not even a part of the record. Not to mention the other amounts that were not proven to be reasonable or necessary.

The Overbys contend Vision challenges only $38,206.38, but, in fact, Vision challenged $46,884.38 of the damages. *Compare Appellant's Brief* at 21-32, *with Appellees' Brief* at 18. The Overbys sought a lump sum for cost of repair damages in the amount of $82,571.38, yet the jury awarded them $72,884.00. It is unclear how the jury even arrived at the amount it awarded, and the Overbys provide no explanation for how the jury could have arrived at that number. Smith testified that there are at most $17,400.00 left in TRCC repairs if he was in fact responsible for those repairs. 6 RR 208-09; RR Part 2, Defendant's Exh. 61, pg. 346.

It is clear the cost of repair damage award is legally insufficient as a matter of law and cannot be upheld. *See McGinty*, 372 S.W.3d at 627; *Smith-Reagan & Associates, Inc. v. Fort Ringgold Limited*, No. 04-13-00608-CV, 2015 WL 1120398, at *3 (Tex. App.—San Antonio Mar. 11, 2015, pet. filed); *Cal-Tex Lumber Co., Inc. v. Owens Handle Co., Inc.*, 989 S.W.2d 802, 821 (Tex. App.—Tyler 1999, no pet.) (remanding for a new trial when lump sum damage award was not supported by legally sufficient evidence); *First State Bank v. Keilman*, 851 S.W.2d 914, 931 (Tex. App.—Austin 1993, writ denied) (holding that "a jury may not 'pull figures out of a hat,'" and when there is no rational basis for the jury's calculation except that it falls between the Plaintiff's and the Defendant's figure, it

is unsupportable and must be remanded). While Vision maintains its request for a take-nothing judgment, it alternatively asks the Court to remand for a new trial or a remittitur if the Court finds that feasible based on the structure of the award. *See* TEX. R. APP. P. 44.1(b) ("The court may not order a separate trial solely on unliquidated damages if liability is contested.").

## IV. Attorneys' fees must be reversed or reduced.

Again, the Overbys ignore the clear mandates of the RCLA in their response to Vision's challenge to the attorneys' fees. Section 27.004(e), limits the attorneys' fees that are recoverable if the Plaintiff "does not permit the contractor or independent contractor a reasonable opportunity to inspect or repair the defect pursuant to an accepted offer of settlement." TEX. PROP. CODE ANN. § 27.004(e)(2). The Overbys accepted Vision's offer of repair on March 30, 2009, and immediately turned around and filed suit the next day. RR Part 2, Defendant's Exh. 48, pg. 195; CR 671.

An incredibly large portion of the Overbys' attorneys' fees were incurred just before and at trial:

| | | |
|---|---|---|
| 12/01/14 | Receipt and review Mitigation Proposal from Vision Design and Build and Bryan Smith | .8 |
| 12/02/14 | Attention to draft of letter in response to Mitigation Proposal | .4 |
| 12/1-7/14 | Prepare for trial | 45 |
| 12/8-12/14 | Attend Trial; evening preparation | 60 |
| | **Total hours for 2014: 145.10 @ $275 per hour** | **$39,902.50** |
| | **TOTAL HOURS TO DATE:** | **386.50** |
| | **TOTAL FEES TO DATE:** | **$94,898.00** |

Plaintiffs' Exh. 58. In fact, $28,875.00 alone were attributable to preparing for and attending trial (45+60= 105 hours @ $275= $28,875.00). *Id.*

The record is clear that the Overbys accepted Vision's offer of repair, yet immediately filed suit—which violates the procedures set out in the RCLA. *See* TEX. PROP. CODE ANN. § 27.004(e)(2). The Overbys actions therefore limit the amount of attorneys' fees they can recover.

Additionally, Vision asked this Court for either a full reversal or at a minimum a remand of the attorneys' fees if this Court reversed all or part of the damage award. The Overbys do not dispute that if this Court were to enter a take-nothing judgment on damages, then the award of the attorneys' fees must also be reversed. But, even if this Court were to reduce the damages via remittitur or remand for a new trial, the attorneys' fees award must be remanded to the trial court. Courts have been abundantly clear that a substantial reduction in the amount of damages warrants a reconsideration by the trial court of the amount of attorney's

fees awarded. *See Hulcher Services, Inc. v. Emmert Indus. Corp.*, No. 02-14-00110-CV, 2016 WL 368180, at \*24 (Tex. App.—Fort Worth Jan. 28, 2016, no pet. h.); *Lone Starr Multi-Theatres, Ltd. v. Max Interests, Ltd.*, 365 S.W.3d 688, 705 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Headington Oil Co., L.P. v. White*, 287 S.W.3d 204, 216 (Tex. App.—Houston [14th Dist.] 2009, no pet.)(citing *Barker v. Eckman,* 213 S.W.3d 306, 314 (Tex. 2006)). Most recently, the Fort Worth Court of Appeals succinctly held:

> The judgment awards $572,148.89 in attorney's fees (as incurred in the trial court) to Emmert. Hulcher challenges this award on the basis, in part, that **it must be "remanded for recalculation** based on the reduced award of damages." **The precedent of our supreme court compels us to agree.** *See Bossier ChryslerDodge II, Inc. v. Rauschenberg,* 238 S.W.3d 376, 376 (Tex. 2007); *Barker v. Eckman,* 213 S.W.3d 306, 314–15 (Tex. 2006); *see also Arthur Andersen & Co.,* 945 S.W.2d at 818 (reciting the factors of the reasonableness of an attorney's fee award under the DTPA, including the "results obtained"); *Acadia Healthcare Co.,* 472 S.W.3d at 104 (remanding a trial court's attorney's fee award for new trial when compensatory and exemplary damages were reduced on appeal); *Powell Elec. Sys., Inc. v. Hewlett Packard Co.,* 356 S.W.3d 113, 129 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("Because we have meaningfully reduced the amount of HP's damages on appeal, we must reverse the attorney's fees award and remand for a determination of attorney's fees."). We sustain Hulcher's second issue to the extent that we reverse the award of attorney's fees.

*Hulcher Services, Inc.*, 2016 WL 368180, at \*24 (emphasis added). Therefore, if this Court reduces the damage award, the attorneys' fees award must be remanded to the trial court.

## V.     The Overbys fail to respond to Vision's complaint regarding the error on the face of the judgment.

By failing to respond to Vision's Sixth Issue—that the final judgment improperly calculated the total sum awarded—the Overbys implicitly agree there is error in the judgment.

## CONCLUSION & PRAYER

The RCLA was put in place for a specific purpose—to require parties to navigate their dispute by first allowing the builder to make repairs before instituting costly litigation. Vision made every effort to make the repairs, although time and time again it was thwarted by the Overbys. And, even after the parties agreed to the repairs, the Overbys immediately filed suit rather than seeing the process through. By doing so, they obtained a lump sum damage award that the Supreme Court has been abundantly clear is not supportable by the evidence the Overbys put forth. A damage award obtained in violation of the clear requirements and obtained without appropriate jury questions and instructions cannot stand. Vision again respectfully requests this Court enter a take nothing judgment, or at a minimum, order a new trial or suggest a remittitur.

Respectfully submitted,


/s/Lorien Whyte
POZZA & WHYTE, PLLC
Dan Pozza
State Bar No. 16224800
Lorien Whyte
State Bar No. 24042440
239 E. Commerce Street
San Antonio, TX  78205
(210) 226-8888 – Phone
(210) 222-8477 – Fax
danpozza@pozzaandwhyte.com
lorienwhyte@pozzaandwhyte.com

THORNTON BIECHLIN REYNOLDS &
GUERRA
Marcella A. Della Casa
State Bar No. 24009862
100 N.E. Loop 410, Suite 500
San Antonio, Texas 78216
(210) 581-0288 – Phone
(210) 525-0666 – Fax
MDellaCasa@thorntonfirm.com

***Attorneys for Bryan Smith d/b/a Vision Design and Build***

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above and foregoing ***Reply Brief of Appellant*** was served via electronic transmission, on this the 9th day of May, 2016, to:

Robert P. Wilson
THOMAS J. HENRY INJURY ATTORNEYS
4715 Fredericksburg Road, Suite 507
San Antonio, TX  78229
rwilson@tjhlaw.com

*Attorney for Appellees,*
*Robert Overby and Teresa Overby*

/s/Lorien Whyte

# CERTIFICATE OF COMPLIANCE

1.      The undersigned certifies that this Reply Brief of Appellant complies with the type-volume limitation of Tex. R. App. P. 9.4(i)(2)(D) because this brief contains 6,175 words, excluding parts of the brief exempted by Tex. R. App. P. 9.4(i)(1).

2.      This brief complies with the typeface requirement of Tex. R. App. P. 9.4(e) because this brief has been prepared in a conventional typeface of 14-point font in the text.


                                        /s/  Lorien Whyte