**Opinion issued December 7, 2017.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-16-00536-CV

————————————

**MICHAEL I. LEAVITT, SUCCESSOR TESTAMENTARY TRUSTEE OF THE BERT EARL GASSAWAY TESTAMENTARY TRUST AND SUCCESSOR INDEPENDENT ADMINISTRATOR WITH WILL ANNEXED OF THE ESTATE OF MARIE ANDERSON GASSAWAY, DECEASED, Appellant**

**V.**

**BALLARD EXPLORATION COMPANY, INC., Appellee**

———

**On Appeal from Probate Court No. 2**
**Harris County, Texas**
**Trial Court Case No. 167164**

———

## O P I N I O N

Appellant Michael Leavitt, successor testamentary trustee of the Bert Earl

Gassaway Testamentary Trust and successor independent administrator with will

annexed of the Estate of Marie Anderson Gassaway, deceased ("the Trust"), appeals the trial court's summary judgment in favor of appellee Ballard Exploration Company, Inc. ("Ballard"). Leavitt sought to collect statutory prejudgment interest and attorney's fees against Ballard based on a claim that Ballard wrongfully withheld royalties. Ballard asserted that although a well operator like Ballard must pay statutory prejudgment interest when it fails to make timely payment of royalties, the Texas Natural Resources Code contains a "safe harbor" provision providing that "[p]ayments may be withheld without interest" when "a dispute concerning title that would affect distribution of payments" exists. *See* TEX. NAT. RES. CODE ANN. § 91.402(b)(1) (West 2011). The trial court granted Ballard's motion for summary judgment and dismissed the Trust's claims for prejudgment interest and attorney's fees with prejudice.

On appeal, the Trust argues that: (1) the trial court erred in ruling that Ballard was entitled to the protection provided by the "safe harbor" provision; (2) Ballard did not meet its summary judgment burden for dismissal of the Trust's claim to recover its attorney's fees incurred in a dispute with a third party based on theories of conversion, unjust enrichment, and equitable subrogation; and (3) Ballard did not present, argue, or prove its alleged affirmative defenses in its motion for summary judgment.

Because we conclude that a legitimate title dispute as contemplated by Natural Resources Code section 91.402(b)(1) existed here, thus authorizing Ballard to withhold payment of royalties to the Trust until that dispute was resolved, we conclude that the trial court did not err in denying all of the Trust's claims. We affirm.

## Background

This appeal involves twelve years of litigation that arose from a dispute regarding royalties from a gas unit in Liberty County, Texas. The Trust traces its royalty interest back to a 1966 deed conveying a 100-acre tract of land in Liberty County from Marie Anderson Gassaway and her brother, Allie Anderson, to A. Chester Holbrook ("the 1966 Deed"). The 1966 Deed reserved a one-sixteenth nonparticipating royalty interest[1] ("NPRI") to Gassaway and Anderson. Allie

---

[1]    The parties refer to this as a nonparticipating royalty interest ("NPRI"). The 1966 Deed referred to it as an "overriding royalty" interest. Because neither party contests the nature of the interest conveyed on appeal, we refer to the interest as an NPRI, as the parties do, throughout the opinion.

"An overriding royalty interest is a non-participating interest. A royalty owner has no right and thus no ability to go onto the underlying property and drill or otherwise take action to perpetuate a lease. An overriding royalty interest owner is wholly dependent on the lessee to keep a lease alive." *Ridge Oil Co. v. Guinn Invs. Inc.*, 148 S.W 3d 143, 155 (Tex. 2004). Typically, overriding royalty interests are part of an oil or gas lease and are extinguished when the lease expires. *See Stroud Prod., L.L.C. v. Hosford*, 405 S.W.3d 794, 803–05 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (discussing nature of overriding royalty interest and duty owed to overriding royalty interest holders).

Anderson's half of this interest was eventually inherited by Charles and David Stroud, while Marie Gassaway passed her half through her will to the Bert Earl Gassaway Testamentary Trust, which was created for the benefit of Bert Gassaway, Marie's son. The successor beneficiary of the Trust is Sadie Boatner (a/k/a Celia Boatner). Holbrook's interest as the executive owner of the mineral interest passed to his successors Bruce Holbrook, Virgil Holbrook, Juanita Rizzo, Ellen Holbrook, and Evelyn Waldrop (collectively, "the Holbrooks").

In 1997, the Holbrooks entered into various oil and gas leases with Anshutz Gulf Coast Corp. covering over 250 acres, including the tract of land conveyed in the 1966 Deed.

In 1999, Ballard acquired the leases from Anshutz. These leases identified the Holbrooks as the lessors and Ballard as the lessee/operator. Ballard hired Shorthorn Resources to examine the relevant titles in order to facilitate royalty payments. According to the affidavit of Ballard's representative, Bob Frederick, this title search did not uncover the Trust's NPRI.

> By contrast, an NPRI "is an interest in the gross production of oil, gas, and other minerals *carved out of the mineral fee estate* as a free royalty, which does not carry with it the right to participate in the execution of, the [b]onus payable for, or the delay rentals to accrue under oil, gas, and mineral leases executed by the owner of the mineral fee estate." *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 75 (Tex. 2015) (emphasis added) (quoting Lee Jones, Jr., *Non-Participating Royalty*, 26 TEX. L. REV. 569, 569 (1948)). "In oil and gas parlance, the owner of a non-participating royalty interest is referred to as a non-executive interest holder, while the holder of the leasing privilege, typically the mineral fee owner, is the executive interest holder. In this division of rights, the executive has the power to make and amend leases affecting the enjoyment of the non-executive's interests." *Id.*

Ballard drilled a producing well known as the Holbrook No. 1 Well ("the Well") that was completed in October 1999. The Well was not located on the tract burdened with the Trust's NPRI. On November 19, 1999, Ballard designated the Holbrook No. 1 Unit ("the Unit") comprised of 234.6 acres, including 38 acres from the tract of land conveyed in the 1966 Deed and burdened with the Trust's NPRI. The Unit designation was recorded in the Liberty County property records. After production from the Well began in December 1999, Ballard paid royalties to the Holbrooks for their entire interest in the pooled Unit, including all of the royalties payable under the pooling agreement for the 38-acre tract burdened with the Trust's NPRI.

Bert Earl Gassaway died on June 26, 2002. In late 2003, Boatner—the successor beneficiary of the Trust—informed the trustee[2] of Bert's death and of the royalty interest owned by the Trust in Liberty County. The trustee discovered at that time that a portion of the land on which it held the NPRI had been pooled in 1999, that "substantial production" from the Unit had occurred between November 1999 and June 26, 2002, when Bert died, and that production continued after Bert's death. Boatner, who believed that the NPRI automatically vested in her upon

---

[2] The original trustee of the Trust was Bernice Leavitt. Bernice Leavitt died on May 10, 2011, and Michael Leavitt was confirmed as Successor Independent Administrator of the Estate and Successor Testamentary Trustee of the Trust on January 26, 2012.

5

Bert's death, made a written claim to Ballard seeking royalty payments based on her interest in the NPRI, which she represented as beginning at the time of Bert's death on June 26, 2002. She was given the opportunity to ratify the lease and pooled Unit and did so on December 1, 2003.

Upon receiving Boatner's claim, Ballard placed the NPRI interest that was the subject of Boatner's claim in suspense and requested that Shorthorn reexamine its earlier title report. Shorthorn indicated that it did not report the Trust's NPRI because it believed that the 1966 Deed conveyed an overriding royalty interest rather than a NPRI based on the language in the Deed.[3]

On March 3, 2004, the Trust made a formal written claim to royalties based on its NPRI to both Ballard and the Holbrooks. The trustee recounted conversations with attorneys for the Strouds and for the Holbrooks that led to discovery of the Well. The trustee asserted the Trust's interest in royalties from the Well's production beginning in October 1999 and continuing at least through the date of Bert Gassaway's death. The trustee's letter stated that correspondence with the Holbrooks' attorney, Edward Pickett, "makes it apparent to me that Ballard has discovered that an error was made concerning erroneous royalty payments made to the Holbrook family and is attempting to rectify the situation."

---

[3] Bob Frederick averred, "Overriding royalties are commonly thought of as being carved out of the leasehold estate and expiring when the lease from which [they were] carved expires."

The Holbrooks, however, maintained that neither the Trust nor Boatner was entitled to any of the royalties from the Well in the pooled Unit. On June 3, 2004, the Holbrooks filed suit in Liberty County asserting that Boatner, Leavitt, and the Strouds had created a cloud on their title to the royalties at issue ("the Liberty County suit"). The Holbrooks essentially argued that because the Well was not located on the tract of land burdened with the NPRI, no royalties were due until the applicable lease and pooling agreement were ratified, and that royalty payments would begin as of the date of ratification. Ballard was not a party to the Liberty County suit.

On September 3, 2004, the trustee filed an original petition for declaratory judgment in the trial court (the Harris County probate court) against the Holbrooks and Ballard, arguing that it had "the immediate right to certain oil and gas royalties that had accrued from pooled production of an [NPRI] owned by the Estate and Trust from the inception of production on or about November, 1999 through the death of Bert Earl Gassaway on June 26, 2002." The Trust alleged that Ballard had suspended payment of the royalties and was holding the monies because the Holbrooks "totally denied" the Trust's interest in the royalties. The Trust also argued that it was entitled to attorney's fees and costs. The Trust further alleged that the trustee "was never contacted by Ballard or the Holbrooks regarding this interest, that it had never been given the opportunity to ratify the pooling, related

7

lease, or related division order, and had never received any of the royalties." However, this suit was abated pending resolution of the Liberty County suit.

On December 6, 2005, the Holbrooks and the Strouds announced that they had reached a settlement in the Liberty County suit. The Liberty County court subsequently granted summary judgment in favor of the Holbrooks, clearing the cloud on their title and determining that neither Boatner nor the Trust was entitled to any of the claimed royalties (i.e., those predating Boatner's ratification of the lease). The Trust appealed, and, on July 10, 2014, the Ninth Court of Appeals vacated the judgment in the Liberty County suit as it related to the Trust on the ground that the Liberty County court had never had subject matter jurisdiction over the claim, and it held that the Harris County Probate Court—the trial court in this appeal—had exclusive jurisdiction over the trustee and actions concerning the Trust. *See Leavitt v. Holbrook*, No. 09-12-00303-CV, 2014 WL 3384672, at \*3–4 (Tex. App.—Beaumont July 10, 2014, no pet.) (mem. op.).

Boatner was not a party to that appeal. The trustee subsequently asserted that when Boatner decided not to appeal, she effectively waived any interest she had in the royalties, and, on June 21, 2012, the Trust sent a letter to Ballard asserting the Trust's interest in the entire claim for royalties, including any claim of Boatner's.

On December 19, 2014, Leavitt and the Holbrooks reached a settlement, including an Agreed Partial Final Judgment in which the Holbrooks waived all

claims to the disputed royalties and a Settlement Agreement requiring payment to the Holbrooks to offset some of their costs. The Trust waived any claim for legal fees against the Holbrooks, and the Holbrooks were dismissed from the underlying suit, while the Trust's claims against Ballard remained pending.

Upon learning of the settlement, Ballard prepared a ratification of the leases covering the portion of land in which the Trust held the NPRI that was pooled into the Unit and a division order. On December 31, 2014, the trustee signed the ratification and division order on behalf of the Trust, and Ballard paid the Trust $63,709.66, representing "all suspended funds attributable to the [Trust's] interest."

On August 14, 2015, the Trust supplemented its petition to allege new facts and arguments in light of the Ninth Court of Appeals' opinion in *Leavitt* and the Trust's settlement with the Holbrooks. The Trust alleged that it was entitled to recover from Ballard "all prejudgment interest on the Trust's oil and gas royalties from December, 1999 through December 31, 2014" and "reasonable attorney's fees and costs pursuant to the protections provided to royalty owners by §§ 91.402, 91.403, 91.404, 91.406 and other provisions of the Texas Natural Resources Code." The Trust also asserted that it was entitled to recover from Ballard all attorney's fees incurred in both the Harris County and Liberty County suits because "Ballard's refusal to pay the Trust any of its legally entitled royalties until

9

December 31, 2014 was without any legal justification since the Trust made demand on Ballard more than eleven years prior." The Trust asserted causes of action for unjust enrichment and conversion, sought the imposition of a constructive trust, and asserted equitable subrogation rights.

On October 30, 2015, the Trust moved for partial summary judgment, arguing that it was entitled as a matter of law to prejudgment interest and attorney's fees under the Natural Resources Code due to Ballard's failure to pay the Trust royalties—royalties the Trust claims it held by "clear, indisputable legal title"—in a timely and accurate manner. This motion was denied by the trial court.

On March 15, 2016, the Trust filed another motion for summary judgment on its request for attorney's fees based on claims of conversion, unjust enrichment, and equitable subrogation against Ballard. Ballard responded, refuting these claims, and, on March 21, 2016, Ballard filed its own traditional and no evidence motion for summary judgment on all of the Trust's claims against it.[4] As evidence, Ballard submitted the affidavit of Bob Frederick setting out the facts discussed above and Ballard's actions in withholding the disputed royalties. It also included copies of the written demands and other letters sent by the trustee, pleadings from

---

[4] Around this time, Ballard filed an amended answer asserting the affirmative defenses of laches, waiver, and failure to mitigate damages, and asserting that the applicable statute of limitations barred some of the Trust's claims. Ballard did not address these affirmative defenses in its motion for summary judgment.

this suit and the Liberty County suit, the judgment from the Liberty County suit, and the opinion of the Beaumont Court of Appeals in *Leavitt*.

The trial court granted Ballard's motion for summary judgment and denied the Trust's motions for summary judgment. It determined that the Trust should take nothing on its claims against Ballard. This appeal followed.

## Summary Judgment

The Trust contends that the trial court erred in rendering summary judgment in favor of Ballard.

## A.  Standard of Review

We review the trial court's summary judgment de novo. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*; *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). A defendant who conclusively negates at least one essential element of the plaintiff's cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). Likewise, a defendant is entitled to summary judgment on an affirmative defense if it conclusively proves all the elements of the affirmative defense. *Id.*

11

When a trial court's order granting summary judgment does not specify the grounds relied upon for its ruling, we will affirm the summary judgment on appeal if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Knott*, 128 S.W.3d at 216. When, as here, both parties move for summary judgment on the same issue and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by both sides, determine all questions presented, and, if we determine that the trial court erred, render the judgment the trial court should have rendered. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

## B. The Trust's Claim for Statutory Prejudgment Interest

In its first issue, the Trust argues, in part, that it presented at least some evidence supporting its claim that it was entitled to statutory prejudgment interest pursuant to Natural Resources Code section 91.403 and that the trial court erred in granting summary judgment in favor of Ballard on this claim. Ballard argues that the Trust is not entitled to statutory interest because, under the undisputed facts of the case and the law, Ballard was permitted to suspend payments of royalties until the dispute over who was entitled to receive them had been resolved. We agree with Ballard.

The owner of an interest in mineral rights conveyed by a deed or another conveyance instrument—such as an oil or gas well owner, a lessor or lessee of

mineral rights, a working interest owner, or a royalty owner—is the title-holder to an interest in realty subject to Natural Resources Code section 91.402. *See generally Concord Oil Co. v. Pennzoil Expl. & Prod. Co.*, 966 S.W.2d 451, 454– 61 (Tex. 1998) (discussing cases addressing deeds and other conveyances conveying fractional interests in mineral estates); *Prize Energy Res., L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537, 561 (Tex. App.—San Antonio 2011, no pet.) (discussing right to future royalty payments on oil and gas production as interest in realty); *see also Clyde v. Hamilton*, 414 S.W.2d 434, 438–39 (Tex. 1967) (holding that "a right to future royalty payments is an interest in land" and that "minerals are part of the land, and royalties . . . are part of the consideration for the sale of the land" and are therefore "corpus" of estate). Part of the obligation of an operator on an oil and gas lease is to pay the royalty owners their royalties on production. *Prize Energy*, 345 S.W.3d at 562. Proceeds derived from the sale of oil or gas production must be paid to each payee[5] on or before 120 days after the end of the month of first sale of production from the well. TEX. NAT. RES. CODE ANN. § 91.402(a) (West 2011). Subsequent payments must be paid in accordance with the terms of the governing lease or, in the absence of specific lease terms, no later than 60 days after the end of the month in which subsequent oil production is sold

---

[5] "'Payee' means any person or persons legally entitled to payment from the proceeds derived from the sale of oil or gas from an oil or gas well located in this state." TEX. NAT. RES. CODE ANN. § 91.401(1) (West 2011).

or 90 days after the end of the month in which subsequent gas production is sold. *Id.*

If payments are not made in the time limits specified in section 91.402(a), the payor[6] must pay interest. *Id.* § 91.403(a) (West 2011); *Headington Oil Co. v. White*, 287 S.W.3d 204, 209–10 (Tex. App.—Houston [14th Dist.] 2009, no pet.). However, a payor is not required to pay statutory interest when payment is withheld under certain enumerated circumstances. *See* TEX. NAT. RES. CODE ANN. § 91.403(b) ("Subsection (a) of this section does not apply where payments are withheld or suspended by a payor beyond the time limits specified in Section 91.402 of this code because of the conditions enumerated in Section 91.402 of this code.").

Relevant here, the Natural Resources Code contains a "safe harbor" provision, providing that "[p]ayments may be withheld without interest beyond the time limits set out in Subsection (a) of this section when there is . . . a dispute concerning title that would affect distribution of payments." *Id.* § 91.402(b)(1). Section 91.402 thus protects royalty owners from intentional delays, while also permitting delays that result from disputes concerning title that would affect

---

[6] "'Payor' means the party who undertakes to distribute oil and gas proceeds to the payee, whether as the purchaser of the production of oil or gas generating such proceeds or as operator of the well from which such production was obtained or as lessee under the lease on which royalty is due." TEX. NAT. RES. CODE ANN. § 91.401(2).

14

distribution of payments. *See Concord Oil*, 966 S.W.2d at 461; *Headington Oil*, 287 S.W.3d at 210; *Browning Oil Co. v. Luecke*, 38 S.W.3d 625, 647 (Tex. App.—Austin 2000, pet. denied).

### 1. *Application of the safe harbor provision*

According to the summary judgment evidence presented by both the Trust and Ballard, Ballard entered into a valid lease agreement with the executive owners of the oil and gas interest, the Holbrooks. Pursuant to the lease's pooling provision, Ballard designated the Holbrook No. 1 Unit and drilled the Holbrook No. 1 Well within the Unit—but not on the tract in which the Trust held an interest—and production began. The Unit included a 38-acre portion of the tract of land conveyed in the 1966 Deed that was burdened with the Trust's NPRI. However, Ballard was unaware of the existence of the NPRI at the time production began in December 1999 and thus paid all of the royalties owed for the tract to the Holbrooks until November 2003, when it received a letter from Boatner's attorney claiming an interest in production from the Unit by virtue of Boatner's status as the successor beneficiary of the Trust. At that time, Ballard placed the royalty interest that was the subject of Boatner's claim in suspense and sought a review of the relevant title documents.

The company retained to provide that review, Shorthorn, informed Ballard that it had not previously noted the royalty interest claimed by Boatner and the

15

Trust because it had been "misidentified" in the 1966 Deed as an "overriding royalty" interest, which, according to Ballard's representative, Bob Frederick, is "commonly thought of as being carved out of the leasehold estate and expiring when the lease from which it was carved expires."

Ballard then received a letter from the Trust claiming its NPRI interest in the 38-acre portion of the tract pooled into the Unit. The Holbrooks subsequently filed their Liberty County suit to quiet title and to remove a cloud on their title to the royalties, asserting that neither the Trust nor Boatner were entitled to the claimed royalties. And the Trust filed a petition regarding this matter in the trial court here. Both in its appeal of the Liberty County suit and in its pleadings in the instant case, the Trust alleged that the Holbrooks wrongly collected royalties due the Trust. It also asserted that legal issues remained regarding whether the Trust's NPRI automatically vested in Boatner upon Bert Gassaway's death.[7] *See Leavitt*, 2014 WL 3384672, at *2 (identifying Trust's arguments on appeal as including claim "that the trial court could not exercise jurisdiction over the trustee to decide that

---

[7]    For example, in its original petition in the underlying suit, the Trust asserted that Boatner was a necessary party, and in its second supplement to its original petition, the trustee asserted that "on the face of the unambiguous governing terms of the will, the Trust's rights to the royalties were totally unaffected by the death of Bert" and that, following the appeal of the Liberty County case, "Boatner has for all purposes waived any right to claim any of the royalties prior to November 17, 2003."

16

the Trust's NPRI asset automatically vested in Celia Boatner on Bert Gassaway's death").

Frederick averred, "It was apparent to me that a title dispute or controversy existed with respect to who was entitled to the proceeds from production attributable to the NPRI in the 38-acre non-drill-site tract in the Unit and that I should cause the disputed amounts of royalty to be placed in suspense. I did so, and they were suspended with respect to production after November 24, 2003."

Ballard continued to hold the disputed amounts in suspense while the Liberty County suit was litigated. The Liberty County court ruled in favor of the Holbrooks and determined that neither the Trust nor Boatner was entitled to the disputed royalties prior to November 2003. The Trust appealed this ruling, and the Beaumont Court of Appeals vacated the Liberty County judgment as to the Trust on the ground that the Liberty County court lacked subject matter jurisdiction over the claims against the Trust. Litigation then proceeded in the trial court here until, in December 2014, the Trust and the Holbrooks reached a settlement. Ballard subsequently prepared the required ratification and division order, the trustee signed them on behalf of the Trust, and Ballard released the suspended funds to the Trust.

We conclude that the record demonstrates, as a matter of law, the existence of a "dispute concerning title that would affect distribution of payments." *See* TEX.

NAT. RES. CODE ANN. § 91.402(b)(1). The letters from both Boatner and the Trust asserting the NPRI in the pooled Unit and the Liberty County suit—in which the Holbrooks sought to quiet title and remove a cloud on their title created by Boatner's and the Trust's claims—are evidence of a dispute concerning the right of certain purported title-holders to receive royalty payments that affected Ballard's ability to distribute royalty payments.

The Trust argues that no legitimate title dispute existed because its title to the NPRI itself was not disputed. It specifically argues that the pleadings in the Liberty County suit demonstrate that the sole basis of the Holbrooks' cause of action was their argument that because the Well was not located on the tract of land in which the Trust held an NPRI and because no one ever ratified the pooling agreement on behalf of the Trust, the Trust was not entitled to any royalties based on production from the Well. The Trust asserts that the Holbrooks' claim was "legally based *solely* on the totally misapplied and misrepresented (both in fact and law) application of one case, *Montgomery v. Rittersbacher*, 424 S.W.2d 210 (Tex. 1968)."[8]

---

[8]    In *Montgomery v. Rittersbacher*, an NPRI owner sued the holders of the executive rights to the mineral estate and the lessee oil company to establish his right to collect the proportion of the royalties accruing under the lease that his NPRI bore to the leased acreage. 424 S.W.2d 210, 212 (Tex. 1968). In reaching its decision in that case, the supreme court stated that "pooling on the part of the holder of the executive rights cannot be binding upon the non-participating royalty owner in the absence of his consent" and that, if an NPRI owner "ratifies a pooling agreement,

18

The Trust misconstrues the law. Here, the issue was whether—under the 1966 Deed reserving the NPRI or the pooling agreement between Ballard and the executive interest owners, the Holbrooks—Ballard, as operator of the Holbrook No. 1 Unit, was required to distribute royalty payments to the Trust from the Well drilled within the Unit but not on the specific tract in which the Trust held an interest. Ballard, however, was unaware of the Trust's potential royalty interest until years after production had begun, when it received notice of the Trust's claim to a royalty interest from the Trust's attorney. The dispute was thus over (1) whether the NPRI to which the Trust held title under the 1966 Deed and the pooling agreement between the Holbrooks, as lessees of the Holbrook No. 1 Unit, and Ballard entitled the Trust to royalties from production from wells drilled within the Unit but outside the area subject to its NPRI reserved in the 1966 Deed, or (2) whether the mineral rights held by the Holbrooks included the right to all of the royalties from that area. This dispute over who owned the right to the royalties from the Holbrook No. 1 Well resulted in litigation that was finally resolved by settlement. This is a classic situation under which the payor (Ballard) was entitled to withhold royalty payments without incurring interest during the delay in payment because of "a dispute concerning title that would affect distribution of

_____

either by joining in the execution of the agreement or by accepting royalties from the pool, his interest is bound by the pooling agreement." *Id.* at 213–15.

payments," namely a dispute over whether the Trust was entitled to the royalty payments or the Holbrooks were. *See* TEX. NAT. RES. CODE ANN. § 91.402(b)(1).[9]

The Trust cites multiple cases in which a Texas court determined that no legitimate title dispute existed. None of them, however, are apposite. *See, e.g.*, *Bomar Oil & Gas, Inc. v. Loyd*, 381 S.W.3d 689, 695 (Tex. App.—Amarillo 2012, pet. denied) (holding that operator was collaterally estopped from re-adjudicating previously settled "title dispute," and thus, no legitimate title dispute existed and award of prejudgment interest was proper); *Valence Operating Co. v. Anadarko Petroleum Corp.*, 303 S.W.3d 435, 445 (Tex. App.—Texarkana 2010, no pet.) (holding award of prejudgment interest was proper where underlying dispute was based on breach of contract and neither party disputed the other party's title to oil and gas payments); *Neel v. Killam Oil Co.*, 88 S.W.3d 334, 341–42 (Tex. App.—San Antonio 2002, pet. denied) (holding that oil company defendants did not dispute that NPRI owners were entitled to at least one-sixteenth royalty interest;

---

[9]    To the extent that the Trust is attempting to argue that Ballard should have ignored the Holbrooks' and Boatner's claims because the Trust consistently argued that those claims lacked merit, we observe that nothing in Natural Resources Code section 91.402(b) requires a payor like Ballard to evaluate the legal merit of a dispute, only that such a dispute exists. Furthermore, the Liberty County court ruled in the Holbrooks' favor, and the Beaumont Court of Appeals vacated the judgment as to the Trust on jurisdictional grounds and did not reach the underlying merits of the claims. Nothing in the record on appeal demonstrates as a matter of law the Trust's entitlement to royalties from production from the pooled unit for the relevant time period between December 1999, when production started, and November 2003, when Boatner ratified the lease and pooled unit.

thus, there was no title dispute that would affect distribution of those payments, and oil companies owed prejudgment interest on undisputed royalties), *disapproved on other grounds by Hausser v. Cuellar*, 345 S.W.3d 462, 470 (Tex. App.—San Antonio 2011, pet. denied) (en banc); *Browning Oil Co.*, 38 S.W.3d at 647–48 (construing section 91.402(b)(2)(b) and holding that Natural Resources Code does not excuse lessees from paying prejudgment interest when dispute involved how to calculate royalties as damages for breach of pooling agreement case rather than constituting legitimate title dispute over who was entitled to receive royalties); *Stable Energy, L.P. v. Newberry*, 999 S.W.2d 538, 553–54 (Tex. App.—Austin 1999, pet. denied) (holding, in breach of operating agreement case, that award of prejudgment interest was appropriate because no legitimate title dispute existed when "[n]o one asserted a claim to the [royalty owner's] interests or contended that their interests were invalid"); *see also Prize Energy*, 345 S.W.3d at 559–62 (award of prejudgment interest was appropriate as penalty for failure of payor to meet prompt payment requirement under section 91.403(a) where payor failed to timely distribute royalties to payees).

Rather, this case is controlled by the line of cases stemming from *Concord Oil* and *Montgomery*. In *Montgomery*, the Texas Supreme Court held that an owner of an NPRI in land leased by an executive owner along with other lands could exercise his option to ratify the lease by filing suit to enforce the lease and could

21

share proportionally in the royalties obtained under the lease. 424 S.W.2d at 211–12, 213–15. The court discussed the title to the property as "including the royalty interest," and it determined that the NPRI holder was only entitled to royalties under his NPRI beginning from the date he ratified the lease. *Id.* at 211, 215. In *Concord Oil*, there was a title dispute involving the distribution of payments. *See* TEX. NAT. RES. CODE ANN. §§ 91.402(b), 91.403(b). The supreme court determined that the title dispute involved two different fractional oil and gas royalty interests appearing within the conveying instrument, and the ultimate legal question was who was entitled to receive particular royalty payments. 966 S.W.2d at 452–53.

Similarly, in *Gore Oil Co. v. Roosth*, the court of appeals addressed a dispute over whether the grantor of a mineral and NPRI interest or the grantor's successor-in-interest should bear the burden of outstanding mineral and nonparticipating royalty interests under an ambiguous deed that determined the distribution of royalties. 158 S.W.3d 596, 597 (Tex. App.—Eastland 2005, no pet.). The court of appeals held that prejudgment interest was "not recoverable when reasonable doubt exists regarding a title dispute" under section 91.402(b), and "[a] title dispute clearly existed in this case, and prejudgment interest was not authorized." *Id.* at 602. It therefore deleted the trial court's award of prejudgment interest. *Id.*

This case is also strikingly similar to *Headington Oil*, which involved a dispute over the correct amount of royalty interest owned and therefore over the amount of royalty payments owed. 287 S.W.3d at 207. The Fourteenth Court of Appeals held that the record established a disagreement among the fractional royalty interest owners regarding the correct amount of their interest. *Id.* at 212. It held, "Because the disagreement affected [the oil company operator's] abilities to distribute royalty payments in accordance with section 91.402(a), it was a title dispute." *Id.* Therefore, "[u]nder section 91.402(b), this title dispute extinguished any liability for prejudgment interest." *Id.*

Here, as in *Headington Oil*, the existence of the Trust's NPRI was never questioned. However, the Trust, Boatner, and the Holbrooks asserted competing interests in the royalties payable for the 38-acre tract pooled into the Unit. This dispute regarding who was entitled to those royalties affected Ballard's abilities to distribute royalty payments in accordance with section 91.402(a) and thus constitutes a title dispute as contemplated by section 91.402(b)(1). *See* TEX. NAT. RES. CODE ANN. § 91.402(a), (b)(1); *Headington Oil*, 287 S.W.3d at 212. The dispute remained active through litigation in Liberty County, an appeal to the Beaumont Court of Appeals, and proceedings in the trial court here. After the dispute was resolved by the Trust and the Holbrooks' settlement agreement, Ballard released the royalties to the Trust. Thus, as in *Headington Oil*, the

23

existence of the dispute concerning title affecting Ballard's distribution of payments "extinguished any liability for prejudgment interest." *See* 287 S.W.3d at 212; *see also* TEX. NAT. RES. CODE ANN. § 91.402(b).

We hold that, here, a legitimate dispute existed over the Trust's right to payment of royalties to it under the 1966 Deed and subsequent pooling agreement versus the Holbrooks' right to receipt of those royalties from Ballard. Therefore, this suit is squarely within the scope of Natural Resources Code Chapter 91, and the Trust's argument that it is not is without merit. On the undisputed facts of this case, the trial court correctly held, as a matter of law, that Ballard was entitled to withhold the distribution of royalty payments from the Holbrook No. 1 Unit until the dispute over who was entitled to the distribution of those royalties was resolved.

### 2. *Effect of section 91.404's notice requirements*

The Trust also asserts that Ballard could not benefit from section 91.402(b)'s "safe harbor" provision because Ballard "failed to comply with the statutory condition precedent of [section] 91.404 of the [Texas Natural Resources Code]." We disagree that section 91.404 provides, as a statutory condition precedent to the application of section 91.402, that a payor must give written notice of a reasonable cause for nonpayment to a payee who, as here, files suit against it for non-payment of royalties. This claim is without merit.

24

Section 91.404 provides, "If a payee [like the Trust] seeks relief for the failure of a payor [like Ballard] to make timely payment of proceeds . . . as required under Section 91.402 or 91.403 of this code, the payee must give the payor written notice by mail of that failure as a prerequisite to beginning judicial action against the payor for nonpayment." TEX. NAT. RES. CODE ANN. § 91.404(a) (West 2011). The payor is then entitled to thirty days after receiving written notice to pay the proceeds due or to "respond by stating in writing a reasonable cause for nonpayment." *Id.* § 91.404(b). By its plain language, this section sets out a "prerequisite to [a *payee's*] beginning judicial action against the payor for nonpayment" and does not reference the *payor's* ability to withhold payments pursuant to section 91.402(b). *See id.* § 91.404(a); *Garcia v. Genesis Crude Oil, L.P.*, No. 13-14-00727-CV, 2016 WL 1732436, at \*3 (Tex. App.—Corpus Christi Apr. 28, 2016, no pet.) (mem. op.) (stating that section 91.404 requires payee to provide written notice of claim to payor "[a]s a pre-requisite to suit").

Nothing in sections 91.404 or 91.402(b) supports the Trust's assertion that Ballard was required to provide a written explanation to the Trust before it could withhold payments pursuant to that subsection. We further observe that both the Trust's brief on appeal and the summary judgment record demonstrate that the Trust was aware of the underlying dispute between it, Boatner, and the Holbrooks,

25

and it was aware that Ballard was holding the disputed royalty amounts in suspense pending resolution of this dispute.

We overrule the Trust's first issue as it relates to its claim for statutory interest.

## C.   The Trust's Claim for Attorney's Fees

In the remainder of its first issue, the Trust argues that if this Court reverses the trial court's judgment and awards it prejudgment interest, the Trust is also entitled to attorney's fees and legal costs. *See* TEX. NAT. RES. CODE ANN. § 91.406 (West 2011) ("If a suit is filed to collect proceeds and interest under this subchapter, the court shall include in any final judgment in favor of the plaintiff an award of . . . reasonable attorney's fees."). Because we determine that the trial court correctly denied the Trust's motion for summary judgment and granted Ballard's motion on the issue of statutory prejudgment interest, we likewise conclude that the Trust is not entitled to attorney's fees pursuant to section 91.406.

We overrule the remainder of the Trust's first issue.

## D.   The Trust's Claims for Conversion, Unjust Enrichment, and Equitable Subrogation

In its second issue, the Trust asserts that the trial court erred in granting Ballard's motion for summary judgment relating to the Trust's claim to recover all legal fees and costs it incurred in the Liberty County suit. The Trust asserts that it is entitled to such fees under theories of conversion, unjust enrichment, and

26

equitable subrogation. The Trust argues that Ballard did not meet its summary judgment burden regarding these claims.

Ballard asserted no-evidence and traditional grounds in its motion for summary judgment. Specifically, it asserted that because it was authorized to place the royalties in suspense, no prejudgment interest or attorney's fees are owed to the Trust and, thus, "there is no legal or rational basis supporting [the Trust's] claim for attorney's fees related to the Liberty County case." Likewise, in its response to the Trust's second motion for summary judgment, Ballard asserted that the Trust's unjust enrichment claim fails because "[o]ne is clearly not 'unjustly enriched' by taking action it is lawfully entitled to take" and that the conversion claim likewise fails because Ballard "received no benefits [from withholding the royalty payments] except avoiding the risk of having to pay twice . . . which is precisely what the statue was designed to protect against." Ballard further argued that "the claim of 'equitable subrogation' is clearly inapplicable to the facts of this case. No one has paid anyone's debts, voluntarily or involuntarily." We agree with Ballard.

As Ballard argues in its brief, its withholding of the disputed royalty was authorized by statute and it paid the proceeds to the Trust once the dispute was resolved. There is no evidence that Ballard kept any funds to which the Trust was entitled or that it was in any way enriched by its dealings with the Trust. *See Lawyers Title Co. v. J.G. Cooper Dev., Inc.*, 424 S.W.3d 713, 718 (Tex. App.—

27

Dallas 2014, pet. denied) ("Conversion is the 'unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights.'") (quoting *Wells Fargo Bank Nw., N.A. v. RPK Captial XVI, L.L.C.*, 360 S.W.3d 691, 699 (Tex. App.—Dallas 2012, no pet.)); *see also Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) ("A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."). Likewise, nothing in the summary judgment record indicates that the attorney's fees incurred by the Trust in the Liberty County suit were incurred as a result of equitable subrogation. *See Frymire Eng'g Co. v. Jomar Int'l, Ltd.*, 259 S.W.3d 140, 142 (Tex. 2008) ("[E]quitable subrogation applies 'in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter.'") (quoting *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 774 (Tex. 2007)).

We overrule the Trust's second issue.

## E.    Ballard's Remaining Affirmative Defenses

In its third issue, the Trust argues that Ballard's alleged affirmative defenses were not presented, argued, or proved up in its traditional and no-evidence motion for summary judgment. Because we affirm the trial court's judgment on the basis

28

of Ballard's arguments under Natural Resources Code section 91.402(b)(1), we need not address arguments relating to any alleged affirmative defenses.

We overrule the Trust's third issue on appeal.

## Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Chief Justice Radack and Justices Keyes and Massengale.